## THE N. B. STARBUCK.

### HARTT v. THE N. B. STARBUCK.

(*District Court, S. D. New York.* January 31, 1887.)

COLLISION—WHARVES AND SLIPS—WEAK BOATS—WANT OF NOTICE.
It is negligence and a fault for old and weak boats, without giving notice of their weakness, to expose themselves along the wharves and slips to the hazards of ordinary contacts and blows from other vessels; and upon injury from a blow, unjustifiable as respects a good boat, they should in such cases recover but half their damages.

In Admiralty.
*Goodrich, Deady & Goodrich,* for libelants.
*Carpenter & Mosher,* for claimants.

BROWN, J. On the fourteenth of September, 1884, the steam-tug Starbuck, with the Wallace, a large vessel, lashed upon her port side, went up the East river with the flood-tide, for the purpose of landing the Wallace along the side of the Noble-street pier, Brooklyn. On account of the size of the Wallace, it was necessary to land her first against the outer end of the pier. While the tug, some distance out in the river, was rounding to against the tide for that purpose, the libelant's schooner, Nellie Bloomfield, bound for the same dock, ran in and occupied the end of the pier. A few minutes before, the schooner Collins had occupied the same place, and, in order to make room for the Wallace, had dropped astern into the slip above, with her bowsprit heading down, across the Noble-street pier. The libelant's schooner was requested to remove in order to permit the Wallace to come along-side; and, for that purpose, the Collins was moved further back in the slip, along-side a bath-house, which was moored in the slip some 30 feet from the end of the pier, and the libelant's schooner dropped back into the previous position of the Collins, heading down river, and along the westerly side of the bath-house. This brought her starboard side nearly in line with the end of the pier. The tug thereupon came up with the Wallace along-side the pier, and, in doing so, the Wallace struck more or less heavily against the side of the libelant's schooner, in consequence of which some of the timbers and planks were found to be broken, or crushed, for which this libel was filed.

There is considerable dispute in regard to some of the details of this case. It is not necessary to speak of them at length. The weight of proof, considering the opportunities of the witnesses for observing the nature of their respective duties, and the impression naturally made upon their minds, is, I think, decidedly to the effect that the Collins lay along the northerly side of the bath-house, with her bowsprit pointing in a direction nearly across the river, so that the libelant's schooner could not move further out of the way without the aid of a tug, or unless the Bloomfield were first moved further away. I cannot find it a fault,.

therefore, in the libelant's schooner, that she remained where she was. Under these circumstances, I think the tug took the risk of landing the Wallace along the end of the pier in such a way as to inflict no severe blow, or any rougher contact with the libelant's schooner than is usual or naturally to be expected in navigation about the piers and slips. If this blow or contact was no greater than such an ordinary contact or blow, the libelant had no cause of complaint, unless he had previously given notice of some special weakness of his vessel that required more than usual care. *The Reba*, 22 Fed. Rep. 546; *The Syracuse*, 18 Fed. Rep. 828. But no such notice was given.

In spite of the testimony and judgment of some of the witnesses for the tug, I am satisfied, as in the cases above cited, that the blow inflicted was such as was unjustifiable as respects either a new or an old boat. The parting of the hawsers, and the breaking of chains by which the bath-house was secured, and against which the libelant's schooner lay, seem to me conclusive evidence on this point, in confirmation of the libelant's testimony. As in those cases, also, there is sufficient evidence of the rottenness of the wood exposed in the side of the libelant's schooner, when she was repaired, to convince me that the schooner was not in a condition of fair or ordinary strength, but weak, and unfit for the usual contacts of vessels about the slips. *The C. R. Stone*, 9 Ben. 182. It is impossible to tell what injury would have been inflicted on a sound schooner by a blow such as this, while I have no doubt that it would have been much less than happened to this schooner. There is no other way, therefore, than to divide the damage, as was done in the cases cited; since both are to be treated as in fault, contributing to the damage that actually occurred. To allow old boats, that give no notice of their weakness, a right to be fully repaired, would encourage them to run in the way of others.

A decree may be entered for half the damages, and a reference taken, if they are not agreed upon, to ascertain the amount.