## PETTIE v. BOSTON TOW-BOAT CO.

*(Circuit Court of Appeals, Second Circuit. December 14, 1891.)*

**1. TOWAGE—LOSS OF BARGE IN TOW—INCOMPETENCE OF PILOT.**

A barge, while being towed through a channel with a hawser 100 fathoms long, sheered from the course of the tug, and struck on submerged rocks, causing her to sink. The pilot of the tug was unfamiliar with the obstructions of the channel, and allowed the tug to go too far to westward of the safe course. *Held*, that the loss of the barge was properly found to be due to the negligence of the tug.

**2. SAME—SALVAGE—REMISSNESS OF OWNER.**

The owner of the barge gave the underwriters notice of abandonment, and that he should claim a total loss. They sent a contracting salvor to the wreck, who made an examination, to ascertain whether the barge could be raised or her cargo of coal recovered, and reported that the barge was not worth raising, and that the expense of recovering the coal would equal its value. *Held*, that the owner of the barge, in seeking to recover for her loss, was not chargeable with remissness, in making no attempt to raise the barge or save her cargo.

**3. SAME—WEAKNESS OF LOST TOW—APPORTIONMENT.**

There having been no concealment of the weak condition of the barge in order to induce the towage contract, and her loss having been in no wise brought about by that condition, the fact that she was too rotten about the decks to admit of her being raised did not affect the owner's right to recover; nor was respondent entitled to an apportionment of the loss on the ground that, but for the weakness of the barge, the loss would have been comparatively small.

**4. SAME—FRAUDULENT OVERVALUATION—COSTS.**

A libelant who is entitled to recover for the loss of a barge through the negligence of a tug having her in tow, but who, being an expert, falsely testifies as to her value, and procures other witnesses to make statements as to her value which he knows to be incorrect, for the purpose of enhancing the amount of his recovery, should be required to pay the costs of a reference to ascertain such value.

44 Fed. Rep. 382, modified.

Appeal from the District Court of the United States for the Southern District of New York.

In Admiralty. Libel by Charles A. Pettie against the Boston Tow-Boat Company to recover for the loss of a barge. Decree for libelant. Respondent appeals. Modified.

*George Bethune Adams*, for appellant.

*Edward H. Hobbs*, for appellee.

Before WALLACE and LACOMBE, Circuit Judges.

WALLACE, Circuit Judge. The barge Richmond Talbot, while being towed by the tug Joseph Bartram, on a voyage from Stonington to Boston, struck the rocks in Lloyd's channel, about three miles out from Stonington, and near the east end of Wicopesset island, and was so injured that she sank immediately. Her owner filed this libel against the respondent, the owner of the tug, to recover the value of the barge and her cargo, on the theory that the loss was the consequence of the negligent navigation of the tug. Among other things, the libel alleged that the barge was of the value of $5,500. The answer, among other things, alleged that the accident was solely due to the carelessness of those in charge of the barge, in allowing her to sheer from the course of the tug. Upon the original hearing in the district court, the questions principally litigated were whether the tug was guilty of negligence in taking a course too near the

rocks on the westward side of the channel, and in providing too long a hawser for the proper control of the barge under the conditions of the channel and the tide, or of negligence in either respect, or whether the disaster was caused by the improper navigation on the part of the tug. There was an interlocutory decree for the libelant, and a reference to a commissioner to ascertain and report the amount of the libelant's damages. A protracted hearing took place before the commissioner, and a large amount of testimony was introduced by both parties respecting the value and condition of the barge at the time of the loss, and upon the question whether the libelant was entitled to recover the whole value of the barge and her cargo, or was negligent in not attempting to raise her or save the cargo. The libelant testified, among other things, that he knew the value of such vessels, and that her value was $6,500 at the time she was started on the trip in question, and that just previous to going on this trip he was offered $5,500 for her by a ship-broker in New York city, whose name he did not remember. Twelve witnesses were introduced by the libelant and thirteen by the respondent, who were examined solely on the question of the condition and value of the barge. The commissioner reported the value of the vessel at the time of her loss at $3,000, and the value of her cargo at $3,315.85; and that the libelant's damages were the whole value of the vessel, $3,000, and the value of her cargo, $3,315.85. Exceptions were filed by the respondent to this report, and upon the hearing of the exceptions the district court ruled that the libelant's damages were the whole value of vessel and cargo, although the loss was in part a consequence of the weakness and rottenness of the barge, which rendered raising her impracticable, and she was so weak and rotten about her deck and water-ways she could not lie in a moderate tide, even in mild weather, without partially breaking up. The court sustained the exception of the respondent as to the value of the vessel, and ruled that her value did not exceed the sum of $1,750. Thereupon the respondent moved the court that the libelant be charged with the costs of the hearing before the commissioner, or some part thereof; but the court denied the motion. The final decree of the district court, thereafter entered, awarded the libelant the full amount of the value of the barge, and of her cargo and pending freight, at the time of the loss, and full costs of the action. The respondent has appealed.

The assignments of error which raise the question whether the barge was sunk by the negligence of the tug, or in consequence of her own negligence, may be disposed of briefly. We agree with the learned district judge that the tug was in fault in going so far to the westward in the channel, and bringing the barge so near the submerged rocks on which she struck; that the barge was not in fault, but was navigated with reasonable care and skill by those in charge; and that the disaster was solely attributable to the fault of the tug. The pilot, Sheffield, had never taken a tow through Lloyd's channel, had never but once gone through there with a steamer, and was not sufficiently familiar with it to undertake to navigate a tug, in an ebb-tide, having in tow a barge

drawing 19 feet of water, on a hawser 100 fathoms long. The law imposes upon the towing vessel the obligation to exercise reasonable skill and care to avoid bringing the tow into collision with a well-known obstruction, and her owner is responsible for the consequences of a disaster resulting from a want of proper knowledge of the perils of the service. When the tug has the control of the navigation of both vessels, those in charge must know the channel, the depth of the water, the currents, the tides, and the ascertained obstructions in the locality where they attempt to go. *The Lady Pike*, 21 Wall. 1; *The Margaret*, 94 U. S. 494; *The Sydney*, 27 Fed. Rep. 123. It has been sought in the present case to shift the responsibility of the tug upon the barge, upon the theory that the pilot in charge of the navigation of the tug was selected by the master of the barge. There is no merit in this contention. The master of the tug requested the master of the barge to assist him in finding a pilot to take the vessels out of Stonington, and the latter went with him to find a pilot. The master of the barge took no part in selecting the pilot, and the evidence does not reasonably indicate that he intended to assume any responsibility in that behalf, or that the master of the tug expected him to do so.

Although the barge was weak and rotten about her deck and waterways, there was no concealment of her condition as an inducement to the towage contract, and it is not shown that she was unfit for the proposed voyage. If the accident had happened in consequence of the infirmity of the barge, or if her condition had been in any respect a contributory cause,—as, for instance, if the shock would not have otherwise caused her to sink,—it might properly be urged that the damages for the loss should be divided. Upon the facts as they are, there is no room for that contention. She was laden with nearly 800 tons of coal, and was carried upon the rocks so that she struck, rebounded, and struck again, at a speed of 5 or 6 miles per hour.

Other assignments of error raise the question whether the libelant should have been allowed to recover the whole value of the barge and her cargo. It appears that he made no attempt to raise the barge or save any part of her cargo. On the day of the accident he gave notice to the underwriters of abandonment, and that he should claim a total loss under his policy, by which he was insured for $3,000 on the barge. The next day, at the instance of the underwriters, the wreck was visited by a contracting salvor, with a diver, men, and equipment, and an examination made to see if it was practicable to raise the vessel or remove her cargo of coal. The wreckers had no facilities for raising the vessel, but were prepared to pump out the coal of which her cargo consisted. The contractor reported to the underwriters that the vessel was not worth raising, and that the cost of raising the coal would probably equal its value. There is no reason to doubt that this was an honest conclusion, based upon intelligent investigation. Upon these facts it is quite unnecessary to consider whether it was incumbent upon the libelant to endeavor to raise the vessel or save the cargo. It is undoubtedly the duty of the owner of a vessel, which has been sunk by the negligent

act of another, to endeavor to raise and repair her and save her cargo, if, under the circumstances of the case, there is a reasonable probability that he can thereby mitigate his loss. *The Baltimore*, 8 Wall. 377; *The Columbus*, 3 W. Rob. 161; *The Falcon*, 19 Wall. 75. If, under such circumstances, he does not do so, he will not be permitted to profit by his own remissness. No principle in the law of damages is better established than that indemnity does not include damages which arise in consequence of the inactivity of the complaining party. *Bagley* v. *Rolling-Mill Co.*, 21 Fed. Rep. 159; *Warren* v. *Stoddart*, 105 U. S. 224; *Wicker* v. *Hoppock*, 6 Wall. 94; *Taylor* v. *Read*, 4 Paige, 561. This principle has often been applied in admiralty, and to encourage reasonable endeavor on the part of those who have sustained loss, to mitigate the consequences, the courts have allowed to the owner of a vessel sunk in a collision the cost of raising her, besides her value before the wreck, when it was necessary to raise her to ascertain whether she was worth repairing. *The Empress Eugenie*, Lush, 138. In the present case, however, it is manifest that, if the libelant had done all in his power to minimize the loss, nothing would have been accomplished. No part of it, therefore, is attributable to his own remissness.

It has been ingeniously argued that the loss should be apportioned, because it would have been comparatively small except for the weakness of the barge. Doubtless the loss would have been less if she had been a strong vessel, strong enough to bear sinking without going to pieces. But the libelant is entitled to indemnity for his actual loss. He would not be compensated by indemnity for what he would have lost if his vessel had been more staunch or had been so strong that she would not have been wounded at all. It might as well be contended that the wrong-doer, who strikes down a cripple or runs over a woman in the family-way, is only responsible to the same extent as though he had injured a man or woman normally sound or well; or that he who sets fire to another's house is not to pay for the furniture, because, if it had been a stone house instead of a wooden one, the furniture would not have been destroyed.

The appellant insists that the libelant should not have been awarded the costs of the reference before the commissioner, and urges that he was guilty of oppressive and fraudulent conduct upon the reference. We are satisfied by a careful examination of the record that the libelant corruptly attempted, by his own testimony, and by the testimony of witnesses in his behalf, whose statements he did not himself believe to be correct, to exaggerate the value of the barge, and obtain an inordinate compensation for her loss. He was an expert, thoroughly qualified to judge of the value of such a vessel. He knew what she had actually cost, and the appraisal placed upon her for insurance just before she was lost. His own testimony was false in respect to matters as to which he could not well be mistaken. Among other statements, it was untrue that he had ever received the offer for the barge to which he had testified. His recklessness in disregarding even the appearance of candor is shown by his attempt to prove the value of the barge at

$6,500 or $7,000, although he had alleged it in the libel to be but $5,500. It must be assumed for present purposes that she was worth only $1,750. It would serve no useful purpose to enter upon any recapitulation or analysis of his testimony, and that of his witnesses, before the commissioner. It suffices to say that we are unable to consider his misstatements, and those of several of the witnesses produced by him, as venial errors which can be reconciled with integrity of purpose by attributing them to honest, but mistaken, estimates in matters of opinion. In deciding questions of costs, courts frequently apportion them so as to cause the costs of one part of the suit to fall upon one party, and those relating to another part to fall upon the other. It is the practice of courts of equity and admiralty, where the conduct of the successful party has been improper, to deny him costs, and in some cases to impose them upon him. *Harvey* v. *Mount*, 8 Beav. 439; *Furrow* v. *Rees*, 4 Beav. 25; *The Marinin*, 28 Fed. Rep. 667. If all the testimony taken before the commissioner had related only to the question of the value of the barge, we should have no hesitation in charging the libelant with the taxable costs of the respondent upon the reference. As it is, we think it just and salutary that he be disallowed his costs of the reference. We are not reviewing as an appellate court a question of discretion, but are hearing an appeal which is a new trial, and must therefore deal with questions of costs as though they were original questions. The decree is reversed, and the cause remitted, with instructions to decree in conformity with this opinion.