### SCOTT v. CORNELL STEAMBOAT CO.

(District Court, S. D. New York. January 22, 1894.)

COLLISION—TUGS AND TOWS — CANAL BOAT FILLED WITH WATER — LIABILITY OF TUGS—DUTY TO RAISE SUNKEN BOAT.

> One of a large flotilla of canal boats, while towing, began to take in water, until her decks were almost submerged. Although her condition was known to the tugs in charge of the tow, the towage continued, at the request of the master of the canal boat, until she broke in two, thereby injuring libelant's canal boat, F., which was astern of the broken boat. It being found that the F. was leaking, she was beached, and afterwards removed by respondent to flats, where she remained until sold by her owner for a nominal sum. *Held,* that it was improper to continue towing, in a flotilla, a boat filled with water, after her condition was known, and that such towing was at the risk of the tug owner, and not of the other boats of the tow; that, after the canal boat was temporarily beached, her owner was bound to take charge of her within a reasonable time, and was liable for any damage which may have accrued after the lapse of such reasonable time; that the tug boat owner was liable for some of the damage to the canal boat's cargo; and that, unless the value of the canal boat, as an old boat, was small, libelant was negligent in making no attempt to raise or repair her.

---

[1] Reported by E. G. Benedict, Esq., of the New York bar.

In Admiralty. Libel for collision. Decree for libelant.

Goodrich, Deady & Goodrich, for libelant.
Benedict & Benedict, for respondents.

BROWN, District Judge. The above libel was filed to recover damages caused by an alleged collision about 8 or 9 o'clock A. M. on Sunday, the 18th of June, 1893, between the libelant's canal boat Favorite and the canal boat Petrie, both loaded with ice, and both a part of a flotilla of boats in tow of the respondents' tugs, coming down the Hudson river. Both boats were outside boats, on the port side of the third and fourth tiers, the Petrie being about 12 feet ahead of the Favorite. These boats had been taken into the tow on Saturday, the day previous. During the following night the Petrie, which was an old boat, had gradually filled with water, so that by 6 o'clock in the morning of Sunday, her decks were level with the water. Her condition at that hour, or previous, was known to the pilots in charge of the respondents' tugs. The Petrie's captain, however, desired that she should continue in the tow until it arrived at Rondout, about 15 miles below the place where the tow was at 6 A. M., and be run upon the flats at Rondout. The towing continued until between 8 and 9 o'clock; when only about six miles above Rondout, the Petrie broke in two. The forward part of her deck came off (Cornwall v. The New York, 38 Fed. 710, affirmed), probably from the lift of the ice beneath, combined with the weakness of the boat, and the strain of the hawser upon the bitts attached to the deck, so that the lower part of the Petrie drifted back, and her stern struck the Favorite's bow, the Petrie's bow at the same time plunging down. The Favorite and the Petrie thereupon broke away from the rest of the tow, and drifted astern. The Favorite was soon picked up by one of the helper tugs and brought again to the tow; but before she was fully made fast to it, she was found to be rapidly filling, having then some three feet of water in her, and she was consequently immediately detached from the tow and taken to the bulkhead at the Ulster ice dock landing. She was so deep in the water that she touched bottom before she got quite alongside the bulkhead; but she was made fast thereto by lines, and by 1 o'clock of that day was filled with water. Her captain remained with her until Tuesday, when he went to Rondout to request the respondents to put her in a more comfortable position, as she was affected at the ice dock by the swell of passing steamboats, and on Tuesday morning had pulled down some spiles of the bulkhead to which her bow was fastened. She was thereupon removed by the respondents, either on Tuesday or Wednesday, first to the breakwater near Rondout, and afterwards to the flats, a mile or two below, at Port Ewen, where she remained several months, and in September was sold by the libelant for $25. About that time a hole some six inches in diameter was found on the bilge of her starboard bow, and a slanting spile fast in the mud was near the position of the hole.

Upon all the evidence in the case, I come to the following conclusions:

1. That the Favorite filled with water as a consequence of the blow she received from the Petrie, whether the hole on the starboard side of the bow was, or was not, made by the Petrie, or by any possible unevenness of the bottom at the ice dock, or by the spile at Port Ewen.

2. That the Favorite, though an old boat, and not in first-class condition, was reasonably fit for the voyage, and is, therefore, not to be held in fault for filling with water.

3. That it was improper, and hazardous to the other boats in the tow, to continue to tow such a boat as the Petrie was known to be, loaded with ice, and filled with water, at least 15 miles after her condition was known at 6 o'clock on Sunday morning; and that the continued towing of the Petrie, instead of detaching her and leaving her at one of several places where she might have been left, was at the risk of the respondents, and not at the risk of the libelant's boat.

4. That the accident to the Favorite was such as to break up her voyage, and render the delivery of the boat and cargo of ice at New York, where she was bound, impracticable.

5. That the ice dock was a suitable place for the temporary landing of the Favorite, until her owner could take charge of her; that the respondents are answerable for any additional damage which she may have sustained while lying there until the lapse of a reasonable time for the owner to take charge of her; and that the owner cannot recover for any additional damage after the lapse of such reasonable time.

6. That some loss on the cargo of ice on board the Favorite was a natural result of the collision, for which the respondents are liable; whether partial or total, may be determined on the reference. The New York, 40 Fed. 900.

7. The evidence before me indicates that the Favorite could have been raised and repaired at a moderate cost, and does not justify the conclusion that she had sustained damages equivalent to a total loss at the time when she was landed at the ice-house dock, or within a reasonable time thereafter for her removal by the libelant, unless her value, as an old boat, was small, and that, if valuable, the libelant was negligent in practically abandoning the boat and cargo and making no attempt to raise or repair her. Towboat Co. v. Pettie, 1 U. S. App. 62, 1 C. C. A. 314, and 49 Fed. 464; The Havilah, 1 U. S. App. 138, 1 C. C. A. 519, and 50 Fed. 333; Railroad Co. v. Washburn, 50 Fed. 336.

Decree for libelant, with reference to compute the damages on above principles.