## THE TIMOR.[1]

### NORDLINGER et al. v. NELSON et al.

#### (District Court, S. D. New York. April 6, 1894.)

1. SHIPPING — CARRIAGE OF GOODS — SHORTAGE IN WEIGHT — "WEIGHT UNKNOWN."

When beans, delivered in rat-eaten bags, and libelant's proportion of sweepings together weighed within ¼ of 1 per cent of the recitals in the bills of lading of the weight shipped, this is sufficient proof on which to found a claim for shortage in weight as against the clause in bill of lading, "Weight unknown."

2. SAME—CONVERSION—CONSIGNEE BOUND TO ACCEPT SWEEPINGS.

A consignee cannot refuse to accept a tender of his proportion of sweepings, and then claim the value of an equivalent amount of cargo, as for a conversion, when the sweepings are confiscated by customs officers. He is bound to accept the tender, and claim for the difference in quality or quantity.

3. DAMAGES—EXPENSE OF RECONDITIONING CARGO—SALE NOT WITHIN REASONABLE TIME—INTEREST.

Where, after the lapse of a reasonable time for reconditioning damaged cargo, the market was the same as at the time when the goods should have been delivered in sound condition, nothing was allowed for loss of market, but only the necessary and proper charges connected with reconditioning the cargo, with interest.

This was a libel by Nordlinger and others against Nelson, Donkin & Co. for damages to a quantity of beans, part of the cargo of the ship Timor. A decree was rendered for libelants (46 Fed. 859), and a reference to a commissioner ordered as to damages. Defendants filed exceptions to the commissioner's report.

Libelants' beans were imported in bags, claimed to be of a standard size, designed to hold 100 pounds each. The weight of the beans was stated in the bills of lading which, however, contained the clause, "Weight unknown." On discharge, the bags were found to be badly rat-eaten, and many of the beans had escaped, in consequence of which a large number of bags were re-receipted for as "slack." The loose beans were gathered up, cleaned, and tendered in new bags to consignees, in proportion to the number of slack bags delivered to them respectively. The weight of the beans delivered in original bags, plus the proportion of sweepings tendered, equaled the weight recited in the bills of lading, less ¼ of 1 per cent., assumed to have been lost in han-

[1] Reported by E. G. Benedict, Esq., of the New York bar.

dling. Libelants claimed for loss in weight of beans delivered, but offered no strict proof of the weight shipped. The commissioner held these facts sufficient to show the accuracy of the recitals as to weight shipped.

Libelants refused to accept the bags of sweepings tendered to them on account of "slack" bags delivered, because not in original packages, and not in good condition, whereupon, being unmarked and not regularly entered under bills of lading at the custom house, they were seized by the customs officers, and sold for nonpayment of duties. The consignees could have obtained these proceeds on application; the ship could not. The commissioner held that libelants were not bound to receive the bags of sweepings, because not in good condition, and awarded damages for nondelivery of the difference between the number of pounds delivered in original bags and the weight recited in the bills of lading to have been shipped.

At the expiration of a period sufficient to have enabled libelants to recondition their damaged cargo for sale, the market had declined, but, before the cargo was sold, advanced again to the point where it was when the steamer arrived. Libelants failed to take advantage of this rise, and subsequently sold the beans at a lower market rate. The commissioner allowed for loss of market the difference between the price when the vessel arrived and what would have been obtained after allowing a reasonable time to recondition the damaged bags.

Wing, Shoudy & Putnam, for libelants.
Convers & Kirlin, for defendants.

BROWN, District Judge. 1. I concur in the commissioner's finding that the actual loss of only ¼ of 1 per cent. in the recovery and cleaning of the sweepings of the beans, is no more than what may be regarded as a necessary loss, incidental to the spilling of the beans through the ship's fault; and that this very small difference in weight becomes, therefore, a sufficient confirmation and proof of the correctness of the weight stated in the bill of lading, in connection with the other proof.

2. The facts do not show any conversion by the ship of the libelants' beans; the sweepings remained the property of the consignees; the libelants were bound to receive their proportion of them, as a part of their consignment, and to enter them as their own property. Damages was all they could recover; not the full value of the beans, as upon a conversion, or a lawful abandonment. The Baltimore, 8 Wall. 377; The Thomas P. Way, 28 Fed. 526; Warren v. Stoddart, 105 U. S. 224; Dolph v. Machinery Co., 28 Fed. 558; Pettie v. Tow-Boat Co., 1 C. C. A. 314, 49 Fed. 467; Railroad Co. v. Washburn, 50 Fed. 336. I do not perceive sufficient evidence of any fault in the defendants in their tender to the libelants. The loss arising from the libelants' refusal to accept their proportion of the sweepings must, therefore, be borne by them, and not by the defendants.

3. The consignees were entitled to a reasonable time for reconditioning their beans, and to recover damages for all necessary and proper charges and expenses connected therewith; and after the lapse of such reasonable time, had there been no opportunity to sell at the market rates prevailing at the time when the goods ought to have been delivered in good order, the consignees would be entitled to recover the difference as a further item of loss; but as the commissioner finds that in June, about two months after

the time of the delivery of the sound goods, the market price was the same as at the time when the goods should have been delivered in a sound condition; and as the intervening two months was a reasonable and ample time for reconditioning all the sweepings, I must hold, on these facts, that the libelants are not entitled to recover anything on account of the loss sustained through a subsequent sale, after a fall in the market value of these goods.

4. The libelants are entitled to interest on the damages, which may be readjusted on the above principles.