## THE JOHN E. BERWIND.

(Circuit Court of Appeals, Second Circuit. December 15, 1920.)

### No. 72.

1. **Towage ☞15(2)—Evidence insufficient to show collision between tow and another boat.**

   In a suit by the owners of a scow against a tug, evidence *held* insufficient to show any contact between the scow and another boat, as the scow was being put into a slip.

2. **Towage ☞11(6)—Tow cannot recover for reasonable rubbings and contacts with other boats.**

   A scow must expect and be able to withstand reasonable rubbings and contacts with other boats during harbor navigation, particularly when making landings and lying at piers, and cannot recover against a tug for such contacts.

3. **Towage ☞15(2)—Claimants of tug had burden of showing unfitness of tow to withstand ordinary rubbings against other boats.**

   In a suit by the owners of a scow against a tug for damages to the scow, the burden was on the claimant of the tug to show that the scow was not fit to withstand reasonable rubbings and contacts with other boats, to be expected in harbor navigation.

4. **Towage ☞15(2)—Evidence held to show scow not fit for ordinary contacts with other boats.**

   In a suit against a tug for damages to a scow 25 years old, evidence *held* to show that the scow was not able to withstand reasonable rubbings and contacts with other boats, such as should be expected in harbor navigation.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Appeal from the District Court of the United States for the Eastern District of New York.

Libel in admiralty by Robert Forsyth and another against the steam tug John E. Berwind, her engines, etc., claimed by the Pennsylvania Railroad Company. From a decree for libelants, claimant appeals. Reversed and remanded, with instructions.

In the early evening of a day apparently fair and calm the tug Berwind, with libelants' scow Edna on her port side, endeavored to put that scow in the slip between Thirty-Sixth and Thirty-Seventh street, East River. The tug had come from Thirty-Second street, and, the tide being strong flood, she rounded to, and, herself coming in contact with the Thirty-Seventh street pier, "began to wedge [her] way over to the Thirty-Sixth street side with the Edna."

On the south side of Thirty-Seventh street pier lay four boats at rest near the pier end; therefore the "wedging" process just referred to meant that the Berwind would pass, and probably touch, these boats while endeavoring to swing the Edna into the slip, whose entrance was much narrowed by the flotilla on the south side of Thirty-Seventh street.

The most southerly of the four boats aforesaid was the Price, and this action grew out of an occurrence thus related by the Edna's master: "Q. What happened to your boat when the Berwind brought you up to the mouth of the slip? A. They was coming in the slip, and then the current took her a little, and swung the tug clear around, so as it hit my boat, right in the middle of the boat, on the corner of the Price. Q. That is, the tide swung the Edna and the Berwind, so that it brought your starboard side amidship against the corner of the Price? A. Yes, sir."

This explanation is based on the scow captain's recollection that he was being towed stern first—a matter very uncertain on the evidence. The Edna was put in her berth, and between two and four hours later was found to be leaking, leaked increasingly, and sank five hours after her condition was observed.

Action is on the theory that the Edna's sinking was caused by hitting the Price. The defense is: (1) She did not hit the Price; (2) if she did, it was a blow of no consequence; and (3) the Edna was old and unseaworthy. The trial court awarded a decree to libelants; claimant appealed.

Burlingham, Veeder, Masten & Fearey, of New York City (John L. Galey, of New York City, of counsel), for appellant.

Macklin, Brown, Purdy & Van Wyck, of New York City, for appellees.

Before WARD, ROGERS, and HOUGH, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). [1] That the tug scraped along, touching the boats (or some of them) lying one outside the other near the end of Thirty-Seventh street pier, is very likely; indeed, this ordinary harbor contact was intended. That the Edna touched the Price is more doubtful, and that any contact occurred as the Edna's master says it did seems to us physically impossible.

The Edna projected considerably beyond the tug's bow, and she may have touched the Price; but the only result to the Price of whatever contact occurred was to "bulge in" her bustle strap "in the neighborhood of half an inch." This strap is an iron band of half or five-eighths of an inch in thickness. How much of a blow would be necessary to produce such indentation we are not informed, but it is

certain that no mark indicative of such contact was ever found on the Edna. We regard it as unproven that the Edna, rather than the tug, came in contact with the Price.

[2] Harbor navigation requires vessels, especially of the Edna's class, to expect and be able to withstand reasonable rubbings and contacts, particularly when making landings and lying at piers. The maneuver of the Berwind was most ordinary, and it is quite beyond experience that a vessel equipped for the business reasonably to be expected could be sunk by such contact as is proven.

[3] The burden of showing that libelants' boat was not fit for the very ordinary harbor episode above described was on claimant, and we are of opinion that by evidence largely uncontradicted that burden has been borne.

[4] The Edna was admittedly at least 25 years old, the master in charge was making his first trip on her, and, though he denies it, there is persuasive evidence that he had spent a great deal of time pumping, and complaining to those near him in the tow of the necessity of so doing.

The surveyor's report is uncontradicted to the effect that some of the Edna's "bottom planking" was very loose and "open in the seams, with hardly any oakum." The oakum generally in the bottom and sides was "very old and rotten," the knees and beams were "very old, some of them decayed, some of them split," and the spiking on the bottom was partly corroded off."

We are persuaded that this case requires an application of the "ancient practice of the admiralty to scrutinize closely claims resting on the loss of old or weak vessels" (The Bordentown [D. C.] 16 Fed. at page 273), and the evidence above summarized leads us to apply the language of Judge Addison Brown in The S. O. Pierce (D. C.) 40 Fed. 767:

"The libelant's boat was a very old one. Under the evidence it is very doubtful even whether the blow was more than one of the ordinary contacts of navigation. Under such circumstances as [we] have named, there is too much doubt as to any substantial injury caused by the blow to warrant any decree. The entertainment of such demands, and any attempt to give damages for the comparatively slight blow that this must have been [if there was any blow] would be more likely to result in injustice, and lead to the multiplication of suits on ill-grounded and fictitious claims, than to promote the cause of substantial justice."

The decree appealed from is reversed, and the cause remanded, with instructions to dismiss the libel, with costs in both courts.