## THE W. C. BLOCK.

## THE WILSON P. FOSS.

## SCHOLL v. CORNELL STEAMBOAT CO.
### No. 8945.

District Court, E. D. New York.
April 1, 1930.

Macklin, Brown, Lenahan & Speer, of New York City (Paul Speer, of New York City, of counsel), for libelant.

Kirlin, Campbell, Hickox, Keating & Mc-Grann, of New York City (Robert S. Erskine and Henry P. Elliott, both of New York City, advocates), for claimant.

BYERS, District Judge.

The barge W. C. Block laid next the north side of the Ninety-Sixth street pier, Manhattan, on the morning of February 4, 1926. She had occupied that berth for five days, having been towed from Edgewater, N. J., on January 26th, laden with 512 tons of coal; she was not then moored to the pier, but, after an interval of about four days, was moved to the position described.

At 9:00 o'clock that morning, the claimant's tug Wilson P. Foss came in contact with the barge, and at about 11:00 o'clock the latter sank.

The question litigated was whether the cause of the sinking was the said contact.

The libel alleges the striking of the barge by the tug, on the port bow corner, due to the negligence and fault of the tug in that those in charge were careless, inattentive, and incompetent, failed to maintain a lookout, and allowed the contact to take place.

The barge had used her pumps on the entire trip from Edgewater, not, however, it is found, because of seas coming aboard. The records of the weather bureau and the testimony of the captain of the tug that towed her negative the testimony of the bargee on that subject.

The barge was sufficiently seaworthy, however, to remain afloat for the period mentioned, until the Wilson P. Foss came alongside—as her captain avers, gently; abruptly and forcibly and with sufficient impact to cause the hull to spring a leak and the barge to sink within two hours in spite of the efforts of her pumps to the contrary, according to the version of the bargee.

There is no satisfactory way to measure the force of the blow, except by what followed. No one denies that the barge sank, but the claimant's theory is that the presence of the Foss, which made fast to the barge, was, in effect, a mere coincidence; or, at most, that, if the impact was peradventure more boisterous than the captain of the tug and his pilot would concede, still the barge should have been sturdy enough to withstand the contact, whatever it was; and that the inability of the barge to survive the contact

should not be visited upon the claimant, and that, if the barge sprang a leak merely because the tug happened to strike her, the loss must fall upon the owner.

The evidence contains many elements of conflict, but one fact stands out clearly: When the tug had been made fast to the barge, the captain of the former stopped on the deck of the latter, on his way ashore, long enough to inform the captain of the barge that his craft was leaking; this, because he heard the dripping of water in the hull under the deck where he was standing; the bargee replied, "No wonder, with the bump you hit us!"

Then the tug's captain called upon his own mate to witness that this was a far-fetched theory. At least, such was the import of the colloquy.

This, of course, does not reveal the precise force of the blow, but it does indicate that, immediately after the tug made fast to the barge, there was sufficient water coming aboard for the tug's captain to hear it. From this, the deduction is permissible that, if water in that volume had been coming aboard previously, in spite of the working of the pumps at that time (which the tug's captain swears to), the sinking would have occurred within the five days that the barge had lain unmolested at the Ninety-Sixth street pier, prior to the advent of the tug on the day in question.

But such sinking did not take place. It did not occur until two hours after the Foss had come alongside the barge, sufficiently to admit of making fast to the latter, so that the captain could use the barge as a means of access to the pier, which was his path to a telephone.

The barge had undergone such repairs in the spring of 1925 that she did not leak when she left the premises of the witness John; he testified that he caulked her sides from her chime seam to the side planking, and made other repairs at that time. And yet by January 26, 1926, her pumps were continually in service in making the trip from Edgewater; while moored at the Ninety-Sixth street pier, it is clear that her pumps were working each day, but the intervals of activity are in dispute.

The bargee's testimony that he pumped about five minutes a day only, while at the Ninety-Sixth street pier, is corroborated by the disinterested witness Oatman, whose barge lay alongside the Foss for at least two days prior to the sinking.

Within the rule laid down in The John E. Berwind (C. C. A. 1920) 270 F. 569, the burden rested upon the claimant to establish that the barge Scholl was not fit for the ordinary harbor episode disclosed in this record.

The only evidence offered to this end is that of the captain of the tug Jumbo as to the constant pumping maintained on the barge during the trip from Edgewater. But that was full five days before the sinking.

It is true that the captain of the Foss said that he heard the pumps going on the Scholl before he made fast on the morning in question, and on previous days when in the vicinity, but his testimony on this subject is no more entitled to acceptance than the testimony of the barge captain, and of Oatman, to the contrary.

In the Berwind Case the court says that evidence of inability of the libelant in that case to withstand the similar "harbor episode" was largely uncontradicted. The contrary is true as to this record.

There was no survey put in evidence, and the testimony of the shipwright John as to the 1925 condition of the Scholl was not controverted.

In The Valvoline (D. C. 1901) 107 F. 752 it was said of a somewhat similar state of facts:

"There ought not to be a rule that should require that a canal boat should be sufficiently strong to withstand impact from the bow of a tug boat negligently colliding with her."

If the claimant had been in the position to prove the alleged age and fraility of the libelant, which it had the burden of establishing (as stated in the Berwind Case), probably it would have done so, thereby taking advantage of the authorities therein cited, and of The N. B. Starbuck (D. C. 1887) 29 F. 797.

This burden the claimant has not sustained; the libelant may take the usual decree, with costs.