358 F.2d 485
 Edward P. SCHROEDER, as owner of the MOTOR YACHT, SKOO-KUM II, Libellant-Appellee,
v.
The TUG MONTAUK, her engines, etc., Sea Bees B. 11, Inc., the OIL BARGE MONTAUK NO. 1, her tackle, etc., and Sea Bees B. 5, Inc., Claimants-Respondents-Appellants, and
Wm. Edgar John & Associates, Inc., Respondent-Impleaded-Appellee.
 No. 263.
 Docket 29707.
 United States Court of Appeals Second Circuit.
 Argued March 8, 1966.
 Decided March 29, 1966.
 
 Richard E. Meyer, New York City (Foley & Martin, New York City, on the brief), for libellant-appellee.
 Edwin D. Kyle, New York City (Krisel & Beck, Maurice A. Krisel, and Herbert B. Halberg, New York City, on the brief), for claimants-respondents-appellants.
 Jerome F. Healy, III, New York City (Healy & Fusfeld, New York City, on the brief), for respondent-impleaded-appellee.
 Before SMITH, HAYS and ANDERSON, Circuit Judges.
 ANDERSON, Circuit Judge:
 
 
 1
 The Milton Point Channel in Rye, New York, runs from its open end on the west, where it branches off from Milton Harbor, to a basin at the east end, where it terminates. Immediately west of the basin there is located on the north side of the channel the bulkhead pier of the Milton Point Shipyard, owned and operated by Wm. Edgar John & Associates, Inc.; and directly across from it on the south side of the channel is the bulkhead pier of the Suburban Oil Company. The channel between the line of piles and the bulkhead pier of the Suburban Oil Company is 85 to 90 feet in width at mean high water.
 
 
 2
 There was permanently attached to the end of the shipyard's pier, facing the channel, a floating dock, to which, on November 3-4, 1959, the power yacht Skoo-Kum II had been made fast, port side to. This vessel was breasted out by bow and stern lines between the float and a line of piles standing about 25 feet distant from and parallel to the end of the shipyard pier. The width of the float projected it approximately 12 feet from the pier. The yacht, built in 1939, had a gross tonnage of 26 tons, an over-all length of 45 feet, a beam of 12 feet and a draft of 4.9 feet. At the time in question she carried several cork-filled canvas fenders on her port side but none on her starboard side.
 
 
 3
 There was undisputed evidence to show that the respondent tug, Montauk, had several times brought in oil barges to the oil company's pier. The Montauk was 64.3 feet in length and had a beam of 19.5 feet. At about midnight on November 3-4, 1959 the tug entered the channel to pick up the Oil Barge Montauk I, which had finished discharging her cargo at the oil company's pier. To put a tow-line aboard the barge and head out again, the tug had to make a 180° turn in the channel. This maneuver was accomplished by turning the bow of the vesssel toward the south side of the channel and by swinging her stern around. In so doing the stern of the tug collided with the yacht Skoo-Kum II and raised her up 12 to 16 inches on her starboard side.
 
 
 4
 The trial court found that the negligent operation of the tug was the sole cause of several items of damage to the yacht, including four broken frames on the starboard side. A decree was entered in favor of the libellant and the third-party action was dismissed. The court awarded the libellant $2213.88 in damages, interest thereon at 6% from the date of the collision in the amount of $700.18, and costs of $201.05. Some of the items of damage claimed by the libellant, including the charge that the collision had forced the twin-engines of the yacht out of alignment, were disallowed.
 
 
 5
 The respondents, the tug Montauk, the Oil Barge Montauk I, and their owners appeal from the decree against them and from the dismissal of their third-party action. The libellant cross-appeals from what it asserts to be a too niggardly award of damages and also against the impleaded respondent Wm. Edgar John & Associates to protect its position in case the judgment of the District Court is reversed. We affirm.
 
 
 6
 The appellants advance several claimed grounds for reversal. One is that this particular yacht under the circumstances of this case should be held to come within the holding of The John E. Berwind, 270 F. 569 (2d Cir. 1920) and barred from recovery as an old or weak vessel. Another claim is that any damage to the yacht was caused solely by the negligence of Wm. Edgar John & Associates in violating Title 33 U.S.C. § 409 by obstructing navigation in placing the piles in the channel and by permitting the yacht to remain at its float. They also assert that the trial court was in error in awarding interest to libellant.
 
 
 7
 In invoking the decision in the Berwind case the appellants are asking this court to extend to pleasure craft what the court in Berwind called "the `ancient practice of the admiralty to scrutinize closely claims resting on the loss of old or weak vessels.'" The court there was of the opinion that it was unjust to permit recovery for a vessel which had set out upon the generally frequented navigable waterways in so old and weak a condition that it could not withstand the "ordinary contacts of navigation," such as a comparatively slight blow, without suffering damage. This very limited doctrine in the few instances in which it has been applied, both before and after Berwind, has been confined to commercial craft and to those contacts which are intended or expected; for example, a vessel which is required to be snubbed into a berth by a tug, or which in receiving or discharging cargo must lie alongside another vessel where wave action may cause it to rub or chafe against the other vessel. The Lena, 49 F.Supp. 191, 192 (E.D.N.Y.1943); The W. C. Block, 41 F.2d 834 (E.D.N.Y.1930); The S. O. Pierce, 40 F. 767 (S.D.N.Y.1889); cf. Pettie v. Boston Tow-Boat Co., 49 F. 464 (2d Cir.1891).
 
 
 8
 In their brief the appellants argue their proposal as follows:
 
 
 9
 "The term `weak boat' while applied, in the John E. Berwind, supra, to a commercial craft which is not tight, staunch and seaworthy, may properly be applied to a pleasure yacht though she be in all respects staunch and seaworthy. By the very nature of its construction a pleasure craft is weak and frail when it is compared to a tug or a barge. The owner of such pleasure craft should, therefore, be duty bound, as the owner of an old or weak commercial vessel, to prevent the exposure of their vessels to harbor contacts, light or heavy."
 
 
 10
 This argument is not persuasive. Circumstances like those in the Berwind case are extremely unusual and rarely have the courts denied recovery for that reason. The purpose underlying the ruling has been to prevent, or at least discourage, the making of fictitious or unjust claims for alleged damage to a commercial vessel which was so old and weak that it was reasonably foreseeable that it would, in any event, suffer damage from the ordinary, expected contacts involved in the course of its work. We do not here attempt to define the very small area, if any, in which the Berwind doctrine might be applicable in cases involving damage to commercial vessels but we reject its application to pleasure craft.
 
 
 11
 Putting aside the unfairness which would deny a yacht owner recovery against a larger, stronger commercial vessel, the clearly negligent operation of which had caused damage to the yacht, this granting of immunity from liability to a large class of vessels for contacts with vessels of another large class, regardless of fault, would encourage violations of the Rules of the Road and seriously disrupt the orderly regulation of sea borne traffic. Appellants have advanced the doctrine in the present case to offset the presumption against the tug as the moving vessel in collision with the moored yacht. Wetmore v. The Granite State, 3 Wall. 310, 70 U.S. 310, 18 L.Ed. 179 (1866); The Pennsylvania Railroad Co. v. SS Beatrice, 161 F.Supp. 136 (S.D. N.Y.1959), affirmed 275 F.2d 209 (2d Cir. 1960). We conclude, however, that the holding in the Berwind case has no application whatever to the case before us.
 
 
 12
 The appellants also assert that the yacht was at fault in obstructing the channel, contrary to the provisions of 33 U.S.C. § 409. But the trial court found from competent evidence that the yacht was wholly within the line of piles which bordered, but did not encroach upon, the customary and traveled fairway and that it in no wise interfered with the navigability of the channel.
 
 
 13
 The appellants' remaining claims that the shipyard was negligent in not placing fenders on the starboard side of the yacht and in not moving the yacht from her berth after being notified that the tug was coming in, are not supported by the evidence and furnish no ground for error. There was, as the trial court found, no persuasive evidence that the presence of fenders would have or could have prevented the damage; and, if it was customary for the shipyard to move vessels lying off from its dock, when notified of the approach of the tug, the practice applied only to craft lying on the outside or channel side of the line of piles and not to those, like the Skoo-Kum II, which were inside. The actual position of the yacht at the time of the collision was undisputed.
 
 
 14
 Although the appellants complain of the allowance of interest in view of the fact that the trial court awarded only $2213.88 on the libellant's claim for $4000 from which appellants argue that delay in the disposition of the case was caused by libellant's assertion of a grossly excessive claim, this and related circumstances were before the district court, and there does not appear to be sufficient ground to warrant this court in holding that there was an abuse of the discretion, which the trial court has, in allowing and fixing interest. O'Donnell Transp. Co. v. City of New York, 215 F.2d 92, 94 (2d Cir. 1954); The Wright, 109 F.2d 699, 702 (2d Cir. 1940); 3 Benedict on Admiralty § 419, at 191 (6th ed. 1940); id. 1965 Supp. at 48. With regard to the amount of damages, while the district court did not specifically itemize the amounts awarded for the separate elements of damage, the expert evidence was conflicting and it was within the province of the trial judge to weigh it and accept or reject the whole or a part of each surveyor's testimony. As the decree is affirmed, it is not necessary to discuss Schroeder's cross-appeal from the dismissal of his impleading petition against Wm. Edgar John & Associates, Inc.
 
 
 15
 The judgment below is affirmed.