## THE ASBURY PARK.

(District Court, S. D. New York. March 13, 1905.)

SHIPPING—STEAMBOAT CAUSING DANGEROUS SWELL—LIABILITY FOR DAMAGE TO BOAT IN TOW.

A steamboat navigating New York Bay at a high rate of speed *held* in fault for creating a dangerous swell, and liable for the resulting injury to a canal boat laden with coal, forming one of a flotilla in tow, which was knocked by the swell against other boats in the tow, loosening the planking at her bow, from which cause she afterward sank, with her cargo. The canal boat also *held* in fault for the neglect of her master to advise the master of the towing tug of her condition, which might have prevented her loss.

In Admiralty.

Carpenter, Park & Symmers, for Western Ins. Co.
Martin A. Ryan, for Tracy and others.
De Forest Bros. and Robert D. Benedict, for respondent.

ADAMS, District Judge. The first of the above entitled actions was brought by the Western Assurance Company of Toronto against the steamboat Asbury Park, to recover from the latter the insurance paid the owners on a loss of about 345 tons of coal, laden on the canal boat Tornado, alleged to have been sunk in the East River, on the 23rd day of May, 1904, through the effect of swells created by the Asbury Park, when passing the flotilla of boats of which the Tornado was one, in the bay opposite Liberty Island. The second action was brought by Michael Tracy and another, the owners of the Tornado, to recover the damages they suffered by reason of the sinking. The libels allege negligence on the part of the Asbury Park in creating swells as she passed the tow.

The answers deny any negligence on the part of the steamboat and allege the accident was caused by the unseaworthy condition of the boat, in connection with the incompetency of the master.

It appears that the tow was made up in three tiers, 4 boats in the head tier, 4 in the next and 2 in the last. The Tornado was on the starboard side of the first tier. The tow was in charge of the tug Anthracite, with the tugs Virginia Jackson and Robert Burnett as helpers. The tow left Port Johnson about 7.30 o'clock A. M. destined for points in the East River. The Tornado was bound for Astoria. The tow reached the vicinity of Liberty Island between 10 and 11 o'clock in the morning and there encountered the steamboat bound from Rector Street, New York, for the Highlands.

The Asbury Park left her pier at the foot of Rector Street at 1 minute after 10 o'clock A. M. under a slow bell, and after going a short distance, her headway was increased to full speed. She proceeded with some care, slowing twice before she reached the vicinity of this tow and again on account of it, reducing her speed temporarily, it is claimed, to about 10 knots per hour. Nevertheless she made her run to the Highlands, a distance of 18 knots in an hour and five minutes.

The steamboat passed the tow at a distance, variously estimated at from 700 to 1500 feet. The effect of her swells was to cause the boats in the tow to pitch and toss and pound against each other for several minutes, causing such damage to the Tornado that she subsequently became in a sinking condition. The claimant urges that as it does not appear that any other boat than the Tornado was seriously injured, it must be inferred that she was weak and unable to withstand the ordinary perils of navigation in New York harbor. There was no testimony, however, to sustain the contention that she was in such a condition. On the contrary, it appears, that although she was 15 years old, she was in fairly good order and would have carried her cargo safely if she had not been subjected to an extraordinary peril. Even if the vessels were 1500 feet away, as contended by the claimant of the Asbury Park, she still would be liable if her swells caused damage to the canal boat. The Majestic, 48 Fed. 730, 1 C. C. A. 78.

The claimant contends, however, that if it should be found that the swells of the steamboat did the original damage, which the libellants' testimony shows was an injury to some planks in the bow, a foot or two above the water line, still the steamboat is not liable because it clearly appears that the sinking of the boat, several hours afterwards, was due to the carelessness and lack of attention of her master. The Steam Tug Gen. Geo. G. Meade, 8 Ben. 481, Fed. Cas. No. 5,312, is cited by claimant. There a boat was lost through the refusal of her master to be towed to a place of safety. The tug was exonerated, but the distinction between that case and the one under consideration is, that there no liability existed upon the part of the tug for the original cause of the loss, because, although the boat struck a pier, which could have been prevented by the exercise of diligence on the tug's part, still the contact being one of the effects which the boat should have been strong enough to resist, it was held that the tug was not liable and that no negligence could be imputed to her after the master of the boat refused to be towed to a place of safety and all proper efforts were made by the tug to reach the boat's destination, where the master desired she should be taken.

As found above, there was in this case a liability on the Asbury Park's part for creating dangerous swells to a reasonably seaworthy boat, but there can, I think, be no question that the master of the boat failed to seasonably notify the tug of her damaged condition. It does not appear that the tug knew of it until just previous to the sinking, when the tug's master observed that the boat was settling by the head more than she should have done and asked the boat's master to sound her. This, it is testified, the latter refused to do and went down into his cabin. The tug master asked the master of another boat in the tow, then well up the East River, to sound the boat, which, after demurring because of there being a master on the boat, he did and found 2 feet of water in her. The tug master in the meantime returned to the deck and commenced pumping and the tug's siphon was also put into operation but notwithstanding such efforts to save her, she suddenly sank in 5 or 6 minutes. If the tug's master had been advised in time, there can be no doubt that the sinking could have been avoided and that in such way the boat contributed to the loss.

It seems to me that the proper disposition of the case, is to hold both of the boats in fault. The libellant the Western Assurance Company is entitled to recover its full damages. The libellants Tracy are entitled to recover half damages from the Asbury Park. A commissioner will determine whether or not there was a total loss of the boat and cargo, and adjust the damages accordingly. This method of disposing of the case is not altogether satisfactory, as it makes no provision for the recovery of the boat's damages from the swells, but doubtless rusticum judicium of this character is the nearest approach to justice that the circumstances will admit of. If desired, the Insurance Company's pleadings may be amended in conformity herewith.

Decree accordingly, with an order of reference.