### THE KAISER WILHELM DER GROSSE.

(Circuit Court of Appeals, Second Circuit. April 2, 1906.)

#### No. 178.

SHIPPING—DUMPING OF DECK LOAD BY LIGHTER—LIABILITY OF STEAMSHIP FOR CAUSING SWELL.

While a lighter with mahogany logs piled on her deck to a height of 12 or 14 feet was unloading at a pier, the waves produced by a passing vessel caused her to break her moorings and strike two or three times violently against the pier, thereby shifting her cargo, and causing her to list to starboard toward the pier. After she had resumed unloading and a log weighing some 2500 pounds had been swung over the pier by means of a boom 60 feet long fastened to the mast 9 feet above the deck, she suddenly careened toward the pier, and a large number of the logs rolled from her deck and were lost. *Held*, that conceding the correctness of a finding that respondent steamship produced the swell which caused the original shifting of the logs, the facts did not show that to have been the proximate cause of the loss, so as to render the steamship liable therefor, but rather that it was due to the negligence of those in charge of the lighter, whose duty it was to correct the list before subjecting her to the additional overturning force of the boom and the weight at its end.

Appeal from the District Court of the United States for the Southern District of New York.

For opinion below, see 134 Fed. 1012.

Joseph Larocque, Jr., for appellant.
A. F. Cushman, for appellee.

Before WALLACE, LACOMBE, and TOWNSEND, Circuit Judges.

WALLACE, Circuit Judge. The decree appealed from condemned the steamship for the value of certain mahogany logs which were cast

overboard and lost by the lighter "Continental," as is alleged by displacement waves caused by the negligent navigation of the steamship.

The averments of the libel, and the findings of the district judge, in respect to the circumstances of the loss, are not sustained by the proofs. The averments and findings are that the waves from the steamship caused the lighter to break from her moorings and dump part of her cargo of logs. The facts are that after the lighter had made fast on her starboard side to the dock, and had unloaded some of the logs, the waves produced by some passing vessel caused her to loosen her moorings and strike two or three times violently against the dock, thereby shifting her cargo, and causing her to list to starboard; and' after the waves had subsided, and about ten minutes had elapsed, and after she had again commenced unloading, she suddenly careened towards the dock to such an extent that 126 logs rolled off her deck.

The testimony is conflicting upon the issue whether any dangerous swells were caused by the navigation of the steamship, and also upon the issue whether the list to starboard of the lighter was due to any unusual waves. The testimony of several of the eye witnesses was very unreliable, as it appears to have been influenced by prejudice or excessive zeal; but as these witnesses were examined in the presence of the District Judge, we do not feel authorized to disturb his findings upon these issues. Accepting these findings as correct, we think the libellant was not entitled to recover, because the evidence does not satisfactorily establish that the misfortune was attributable to the original listing of the lighter, and is more consistent with the theory that it was attributable to the want of due care subsequently upon the part of her master and crew.

The mahogany logs were of the average weight of 2,500 pounds each, and were stowed upon the deck of the lighter in tiers about 12 or 14 feet high. They were unloaded by means of a derrick, the boom of which was 60 feet long, and was fastened to the mast 9 feet above the deck of the lighter. Three of the logs had been unloaded before the waves appeared. After they had subsided the unloading was resumed without any further precautions, and it was while the first log was being swung over the dock that the lighter careened so violently that more than half her deck load rolled into the water. Just how far the boom had been swung out at the time does not appear. If it had been swung out at right angles, the weight of the log at the end of the boom would have been equivalent to an overturning force of about 75 tons. If the lighter was under the influence of a list to starboard the weight of the log would be a still more important factor. The disaster was accelerated by the rolling towards the dock of some of the logs which had shifted when the original list occurred, and which rolled while the log at the end of the boom was swinging over the dock. The concurrence of these two causes accounts for the disaster. The original shifting of cargo and listing of the lighter were not the proximate cause of the accident, if the accident would not have happened except for the intervening negligence of those in charge of the lighter. There had been ample time and opportunity for those in charge of the lighter to discover whether the cargo had shifted, and

whether the vessel was listing towards the dock. If this had occurred they should have seen it, and when they resumed unloading should have taken some precautions to correct the situation. The burden of proof was upon the libellant, and the testimony is as consistent with the theory that the accident was caused by the negligence of those in charge of the lighter, as with the theory that it was caused by the fault of the steamship.

The decree is reversed, with costs.