THE ASBURY PARK.

(Circuit Court of Appeals, Second Circuit. May 22, 1906.)

Nos. 201, 202.

SHIPPING—STEAMBOAT CAUSING DANGEROUS SWELL—LIABILITY FOR INJURY TO BARGE IN TOW.

A large steamboat navigating New York Bay at a high rate of speed *held* in fault for creating a dangerous swell, and liable for an injury caused thereby to a barge in tow, which was knocked against other boats and her planking broken, but not liable for the loss of the barge and her cargo through sinking some hours afterward, which could have been prevented by proper care on the part of her master, and was proximately due to his failure to keep her pumped out or to notify the master of the towing tug of her condition.

[Ed. Note.—For cases in point, see vol. 44, Cent. Dig. Shipping, §§ 344, 345.]

Appeals from the District Court of the United States for the Southern District of New York.

Appeal by the steamship Asbury Park and the owners of barge Tornado from decrees of the District Court (136 Fed. 269) for the Southern District of New York holding the steamship in fault for damages alleged to have been caused by displacement waves, and the owners of the boat Tornado liable for the negligence of her master, and awarding full damages against the steamship in favor of the assurance company for loss of cargo and one-half damages against said steamship for the loss of the Tornado.

R. D. Benedict, for appellant the Asbury Park.
· M. A. Ryan, for appellant Tracy.
J. K. Symmers, for appellee.

Before WALLACE, TOWNSEND, and COXE, Circuit Judges.

TOWNSEND, Circuit Judge. The court below has found that the swells from the steamship caused such damage to the boat Tornado that

she subsequently became in a sinking condition, and that the master of the boat was negligent in failing to notify the tug of her damaged condition, and that by reason thereof the boat contributed to the loss.

The record establishes the correctness of the finding that the swells from the steamship caused damage to the boat, and that her master was negligent. But the evidence as to such negligence does not justify the decree as to the award of damages. The proofs show that the damage caused by the swells was not such as to cause the boat to sink, provided she had been properly pumped out. Her master, Cassidy, testified that she was stove in above the water line, and that as soon as he saw that she was leaking he commenced to pump and reduced the amount of water in her from about 12 inches to 8 or 9 inches while she was being towed from off Liberty Light up to Fourteenth street, where she lay for nearly an hour. After the tug started to tow the boat from Fourteenth street up East river he did not pump any longer, but went below to dinner, although he testified that her condition was such at Fourteenth street that he said to the captain of the tug, "If you get this boat in the trough of the sea you are going to sink her." The captain of the tug denies that he received any such notice. When Cassidy came up from dinner he found Hamilton, a man from the Eleanora, one of the other barges, who had been sent aboard by the captain of the tug, and they took measurements and found two feet of water in her hold. They then put the siphon in, but after it had been used for two or three minutes the boat filled rapidly and sank. Furthermore, although Hamilton, at the request of the master of the Tornado, had assisted him in pumping her out while she was coming up the bay, yet when he went down to dinner he did not ask Hamilton or any one else to pump while he was below.

In these circumstances it is clear that the swells from the Asbury Park were not the proximate cause of the sinking of the Tornado and of the loss of her cargo, but that these damages resulted directly from the negligence of the captain of the boat in failing to use reasonable diligence to minimize the effects of the original damage. The case presented, therefore, is not one of mutual fault, the two causes contributing to produce a loss, but of two successive causes distinct and separate from each other. The rule of damages in such cases, as stated by the Supreme Court in The Baltimore, 8 Wall. (U. S.) 387, 19 L. Ed. 463, is as follows:

"Persons injured by collision are entitled to indemnity, but the respondents are not liable for such damages as might have been avoided by the exercise of reasonable skill and diligence after the collision on the part of those in charge of the injured ship."

The master of the boat, knowing the peril to which she was exposed in going up the river and the imminent danger by reason of her leaky condition, failed either to continue the pumping himself, although he knew that thereby he might avoid all further damage, or to ask any one to assist him while he went below to dinner leaving the boat to her fate, or to call the attention of the captain of the tug to her condition, as found by the district judge. The captain of

the tug testified that if he had been told that the boat was leaking, he could have siphoned her out and kept her free until she arrived at her destination.

We have had occasion to consider a similar question at this term of the court in Commercial Lighterage Company v. Steamship Kaiser Wilhelm der Grosse,[1] and the reasoning and conclusions in that case are relevant upon the facts proved herein. The court below, therefore, should have entered a decree against the Asbury Park and in favor of the owners of the boat for the damages directly caused by the displacement waves, and a decree dismissing, with costs, the libel of the assurance company against the Asbury Park, because said waves were not the proximate cause of the loss of the cargo.

The decrees are reversed, with costs of this court, and with instructions to the court below to enter decrees in accordance with this opinion.