## THE COLERAINE.

### THE NELLIE TRACY.

(District Court, E. D. New York. July 27, 1910.)

**1. Towage (§ 17*)—Tug and Tow—Mishap to Tow—Warning.**
While the captains of other barges in tow of a tug are not required to perform any service with reference to another barge in the tow to which an accident has happened, they do owe a duty to warn the tug thereof.

[Ed. Note.—For other cases, see Towage, Dec. Dig. § 17.*]

**2. Towage (§ 12*)—Injuries to Tow—Negligence—Equal Fault.**
Where one of the scows of a tow was swamped owing to the failure of the tug to keep a proper watch of the tow and of the conditions of wind and weather affecting the tow, and the captain of the scow, in the face of danger, did nothing to protect his boat from the inrush of water, and did not attempt to attract the attention of the tugs, both were chargeable with blame for the loss of the scow, so that the damages would be divided.

[Ed. Note.—For other cases, see Towage, 'Cent. Dig. §§ 24–26, 29; Dec. Dig. § 12.*]

In Admiralty. Libel by the New York & New Jersey Transportation Company against the steam tugs Coleraine and Nellie Tracy. Damages divided.

Wray & Callaghan (Albert A. Wray, of counsel), for libelant.
Martin A. Ryan, for claimant.

CHATFIELD, District Judge. This court has already found that the course pursued by the tugs, and the failure on the part of the tug Coleraine to keep proper watch as to its tow, and as to the conditions of wind and weather affecting the tow, were negligent acts, sufficient to hold both tugs responsible for the accident. It might be possible to differentiate between the tugs, or to hold the Coleraine alone responsible; but inasmuch as the Nellie Tracy shared in the failure to keep a lookout, or profit by what lookout she had, and as both tugs are owned by the same company (the tug Nellie Tracy acting under the direction of the Coleraine), it would seem to be reasonable to excuse neither one for their part in the general neglect. On the

other hand, the captain of the Virginia E. and the captains of the
other barges seem to have had no idea that they were responsible for
such acts of prevention or such acts of warning as would be timely to
prevent the accident. The captain of the Virginia E. was worried
about the safety of his wife and himself, but did not apprehend that
his scow would be lost to its owners, or that he should do anything
to protect the boat, until the captains of the other boats came to his
rescue, and of their own accord began to give signals to the tug.
Even the captains of the other boats, who seem to have had more
appreciation of the risk, made no serious attempt to signal the tug,
but debated the likelihood of disaster resulting from the apparent
danger, until a sudden increase of wind caused a prospect of im-
mediate disaster.

While no duty rested upon the other captains to perform any serv-
ice with reference to the boat Virginia E., nevertheless these captains
owed it to the tug, which was doing the towing, to warn it in time of
any mishap to the tow; and their evident hesitation in disturbing the
tug, and their participation in the idea which the captain of the Vir-
ginia E. seems to have had, that he had nothing to do except to wait
until arrival at his destination, is more or less instructive in showing
the relations existing between the crews of the tugs and the men upon
the barges, and indicates that these barge captains should be shown
that some responsibility rests upon them. The captain of the Virginia
E. might not have been able to put all of the hatch covers across the
large cock-pit to his barge, and he might have been entirely unable
to interpose any obstruction to the sweep of the waves along the
deck; but, if that were the case, he should immediately have attempted
to warn the tug. The evidence shows plainly that a long time elapsed,
in which he not only did nothing, whether useful or otherwise, to keep
the water out of his boat, but also did nothing in the way of attract-
ing the attention of the tugs. Under such circumstances, the tugboats
and the barge should be held responsible for the loss.

This case differs from that of The Asbury Park (D. C.) 136 Fed.
269, in which, in the District Court, both the Asbury Park and the
coal boat were held jointly responsible, on the ground that the Asbury
Park had negligently caused the swells producing injury, while the
master of the boat had failed to perform his duty, both in neglecting
to call for assistance and in leaving his boat to herself in time of dan-
ger; while on appeal ([C. C. A.] 147 Fed. 194) the decree was modi-
fied, the court holding that the cause of sinking was not the joint act
of the two boats, but that each was a separate transaction, and that
the proximate cause was the failure of the master of the boat to take
care of or attempt to obtain help for his own boat. Likewise, in the
case of The Baltimore, 75 U. S. 377, 19 L. Ed. 463, it was held that,
after a collision, the boat in fault for the collision was not also re-
sponsible for a failure on the part of those in charge of the injured
ship to use reasonable skill and diligence, and that damages should
not be recovered for the augmented injuries due to the negligence of
the parties themselves.

But in the case at bar the continued progress of the boats under
conditions which should have been taken into account by the master

of the tugboat, and the disregard of proper precautions by the master of the barge, were contemporaneous. An extremely severe increase in the wind, or rather a short period of much higher wind than that which had preceded it, proved to be sufficient to swamp the Virginia E., in the condition in which she was. Both the tug captain and the captain of the Virginia E. should have anticipated that a hard blow might occur, in view of what had been going on for half or three-quarters of an hour. The negligence of the towboat might have been overcome by care on the part of the barge's master, and, on the other hand, the negligence on the part of the master of the barge might have been overcome by care on the part of the towboat. And it seems necessary to reach the conclusion that both acts of negligence entered into the loss of the boat in such a way that the entire blame should not be put upon one alone.

The damages will be divided.