## THE MARS.

### THE S. O. No. 8.

(District Court, S. D. New York. April 30, 1914.)

1. **Negligence ⬤⇒58—"Proximate consequence" must be within range of probability, as viewed by ordinary men.**

To constitute "proximate consequence," thing happening, in addition to being in train of physical causation, must be one which is not entirely outside range of expectation or probability, as viewed by ordinary men.

2. **Negligence ⬤⇒61(1)—Subsequent carelessness, intervening between negligent act and damage, will not relieve negligent party.**

That subsequent piece of carelessness intervenes between negligent act and damage complained of will not relieve negligent party from responsibility.

3. **Collision ⬤⇒142—Tug held not liable for damages from sinking of rammed barge, due to continued loading after collision.**

Tug, bringing barge which she had in tow into collision with barge lying alongside pier, damaging her about three feet above water line, *held* not liable for damages due to sinking and expense of raising as result of continued loading after collision, causing barge to settle until opening in her side was below water level.

4. **Collision ⬤⇒144—Rule as to dividing of damages stated.**

Where two joint wrongdoers contribute simultaneously to injury, they share the damages; but where one completes his wrong, and subsequent damages are due to an independent act of negligence, which supervenes in time and has for its basis a condition which has resulted from the first act of negligence, damages are not shared.

In Admiralty. Libel by the barge Mars, owned by the C. F. Harms Company, against the steam tug S. O. No. 8. Decree for libelant.

James J. Macklin, of New York City, for libelant.

Burlingham, Montgomery & Beecher, of New York City (Chauncey I. Clark, of New York City, of counsel), for claimant.

LEARNED HAND, District Judge. In this case the libel is filed for damage done to the barge or scow Mars, which was alongside a dock receiving refuse on October 1, 1912, in Newtown creek. The Standard Oil tug No. 8 came into Newtown creek with a large barge of her own in tow, and in her maneuvers in that creek she brought her barge No. 79 into collision with the libelant's barge Mars, and inflicted some damages. The tug does not dispute her liability for the damage done by that collision at the time, and has already offered a decree for an amount which she thinks will cover those damages. Subsequently, however, either the next day or the day after, the barge Mars sank alongside the pier.

It is agreed on all hands that the damage was about three feet above the water line, and that the cause for the sinking of the barge was that they continued to load her during that day and part of the next day, until they got the opening in her planks below the water line, so that she filled. The barge makes claim for damages due to the sinking, not only the expense of raising her, but the added damage which was done to her while she was being raised or at the bottom. The only question in the case, therefore, is: Who shall be responsible for that damage?

The barge had been chartered to a refuse company, which had a contract with the city of New York, and she was therefore in immediate possession of the refuse company; but no question is raised of their responsibility, nor of the responsibility of the city. The way she was loaded was to have the dump carts driven on a platform, which was above the dock, and when they were backed over the barge they were dumped onto her deck. Her owner, the libelant here, had a captain, one Benson, and instructed him in general to take care of the barge, to look after her, and be on her. It appears that Benson, on the day in question, had been there earlier in the morning, but had left, and did not appear again that day. Whether he appeared on the next day or not is somewhat uncertain, but there were considerable parts of the next day, also, when he was not there.

The collision happened at about 10 o'clock in the morning. At the time of the blow there were a number of men upon the barge, and there were also some upon the pier. The superintendent for the city was among the latter. He was talking with the foreman of the trimmers, and saw the collision. It was noticeable to everybody, both on the barge and on the dock. It made some noise, and drove the barge Mars with some violence against the side of the dock, so that it was absolutely apparent to every one. The case, therefore, turns entirely upon what

we should call the reasonable and proximate results of the wrongful act of the tug.

[1] A great deal has been written about reasonable and proximate consequence, and for myself I never have had much enlightenment, except on this which seems to me is the only intelligible line of decision: What would an ordinary man expect, under all the circumstances, to be the result? If something supervenes which nobody would expect, and no one had a right to expect, I think the authorities hold, or should be interpreted, at least, as holding, that that is not attributable to the wrongdoer. I do not think it is enough, and I do not think any one supposes it is enough, that in the mere train of physical causation the result should follow from the wrongful act. There must also be some mental element. It has got to be one of those consequences which is not entirely outside the range of expectation or probability, as ordinary men view it.

[2, 3] I agree that the fact that a subsequent piece of carelessness intervenes does necessarily not remove responsibility from the wrongdoer; but I do think that a man is entitled to suppose that, in loading a barge, some examination will be made after so evident and obvious a collision as this. For example, I should think that if this barge had been at anchor, and had it been apparent that no one was aboard her, and then the collision had taken place, and if the result of the collision had been no greater than it was here, and she had afterwards loaded and sunk, I would say in that case the responsibility was partly on the tug, because it does not seem to me that the injury was clear enough to publish itself to her owners. But that was not this case. Everybody who was in the neighborhood knew that there was a collision here. The tug had no obligation that I can think of which would have in the least changed the situation. The idea which was suggested by Mr. Macklin that she should have stood by I can hardly think relevant. What could she have done, if she stood by? The barge was in no danger of sinking. If she had stood there, she could only have advised those on board that the damage had been done. They knew it already; everybody in the neighborhood knew that some damage had been done.

I think the tug had the right to suppose that there was some one on board who was interested in the care and protection of the barge itself, and so there ought to have been. The captain had been hired for that purpose, and failed in his duty. He was not there from the morning, all day long.

No one pretends that the master of the barge is doing his duty when he abandons her to that extent. I know that the men hired to protect such craft are difficult to discipline, but that does not throw the blame on any one but the men themselves and those who employ them. If no better men can be obtained for low wages, higher wages will have to be paid. Certainly, being employed for that purpose, when they fail in that duty, the responsibility is higher.

Therefore I cannot think that the tug failed in any duty after the collision occurred, and moreover, I cannot think that it was reasonably to be expected by the tug that the loading would go on without examination. It has been suggested that the tug knew much more about it than those on shore. That may be so to this extent: It may be that the planks were more visible from the tug than from the shore. That, indeed, must have been true, but there was nothing that the tug knew that was not ascertainable by proper examination. Dolan says he thinks he looked over the side, but I cannot think that Dolan's examination was adequate. I cannot think that an injury which was apparent from the water was one which reasonable investigation would not have disclosed. It seems to me quite clear that the tug had the right to suppose that an examination which would be made would be quite as exhaustive as anything which they themselves knew.

So it does not seem to me that, from the point of view of the proximateness of the damages, the sinking was due to the collision. One may phrase it either as not being one of those damages which the tug was bound to anticipate, or as being negligence of reasonable duty on the part of the barge. I do not think it makes much difference which way one puts it. In either case, the responsibility for the subsequent damages rests upon the barge.

[4] It may be thought that this was a proper case for dividing damages. I think not. The case of Prince v. Luckenbach, which Mr. Clark has cited, is final authority to the contrary. I take it that the distinction there is this: Where two joint wrongdoers contribute simultaneously to an injury, then they share the damages; but where one of the wrongdoers completes his wrong, and the subsequent damages are due to an independent act of negligence, which supervenes in time, and which has as its basis a condition which has resulted from this first act of negligence, in that case they do not share; but in that case we say that the con-

sequences of the first act of negligence did not include the consequences of the second.

That has been the rule in several admiralty cases. The Egyptian, [1910] A. C. 400. It was the case in The Luckenbach. The same reasoning applies also in the swell cases, although I agree with Mr. Macklin that those cases are not strictly in point here.

I shall direct a decree for the libelant to the extent of the damage itself, but no farther.