ECLIPSE LIGHTERAGE & TRANSPORTATION CO. v. CORNELL STEAMBOAT CO.

(Circuit Court of Appeals, Second Circuit.    April 10, 1917.)

No. 181.

Collision ⬳72(1)—Sinking of Moored Barge—Fault.

Respondent's tug moored a barge in a canal some time after 1 o'clock at night in such manner as to strike another barge lying alongside, awakening the watchman and causing a leak, from which she sank in the morning. The watchman made an examination, but found no leak. *Held* that, from the injury caused by the blow, there must have been a leak at the time of such extent that he should have found it with proper care, and that the trial court properly held respondent liable only for the dam-

age caused by the blow, and not by the sinking, which the watchman might have prevented.

[Ed. Note.—For other cases, see Collision, Cent. Dig. § 102.]

Appeal from the District Court of the United States for the Southern District of New York.

Suit in admiralty for collision by the Eclipse Lighterage & Transportation Company, owner of the barge Amherst, against the Cornell Steamboat Company, owner of the tug Williams. Decree for libelant for part damages, and it appeals. Affirmed.

Foley & Martin, of New York City (William J. Martin and George V. A. McCloskey, both of New York City, of counsel), for appellant.

Kirlin, Woolsey & Hickox, of New York City (J. Parker Kirlin and Robert S. Erskine, both of New York City, of counsel), for appellee.

Before COXE, WARD, and ROGERS, Circuit Judges.

COXE, Circuit Judge. On the night of April 14, 1912, a tier of barges had been moored on the north side of the Gowanus Canal and another tier had been moored beyond them at their sterns. The outermost barge of the second tier was the Amherst, which was injured. She arrived at about 6 o'clock in the evening in tow of a tug which put her in place. There was only one man aboard the barge; he was in full charge. He retired about 1 o'clock a. m. Respondent's tug Williams came into the canal with a tow of two barges, one of which was loaded with stone and had a freeboard of about 15 inches. The District Judge found that she was moored alongside the Amherst. The question is whether the faulty seamanship of the tug in mooring her alongside the Amherst caused the leak which produced the injury. There is no doubt that there was a collision between the stone barge and the Amherst sufficiently severe to wake up the latter's watchman, who came on deck and then went into the hold of the Amherst and, as he testifies, examined her throughout. Seeing nothing amiss, he came to the conclusion that there had been no serious damage and retired to his bunk. He was awakened the next morning by a shout that his barge was sinking and got on deck just in time to avoid being carried down with her.

There can be little doubt that this injury was caused by the collision, the rake log of the Amherst having received a transverse blow. The evidence justifies such a finding as the injury could not have been occasioned by the mere turning over of the barge. No plausible reason other than the transverse blow is suggested for the sinking. The testimony justifies the inference that the blow caused the leak which resulted in the capsizing of the barge. This being so, we are not justified in setting aside the finding of the trial judge upon a pure question of fact. Assuming the injury to be the result of the blow on the rake log it is clear that the libelant was required to exercise ordinary care and prudence to prevent the sinking of the Amherst after the blow. Nelson, who represented the libelant on the Amherst, testified as to the force of the blow. He thought that the blow was sufficient to cause serious damage, but an examination by him directly after the blow was received failed to discover a leak although a large amount of water

must have entered the barge during the time that he was making the examination.

If the leak had been discovered, and it seems to us that it might have been, the damages would have been reduced to the comparatively small sum of $200; that it was not discovered must be attributed to the negligence of the libelant's representative on the barge. If he had made a diligent search he might have discovered the leak and by setting the pump at work he would in all probability have prevented the disaster. Instead of doing this he made a casual examination and retired to his bunk. The trial judge limited the recovery to the injuries received by the blow and did not allow damages for the sinking of the barge for the reason that these damages might have been avoided if ordinary diligence had been exercised in discovering the extent of the damage occasioned by the collision. We think he was right in so holding.

The decree is affirmed with costs of this court to the appellee.