### THE ROMAN PRINCE.

### KEENAN v. PRINCE LINE, Limited, et al.

(District Court, S. D. New York. June 28, 1921.)

Collision ⬅➡127—Held not proximate cause of a personal injury occurring 30 minutes later.

Libelant was in the cabin of a moored barge when she was struck by a steamship passing out of the slip and so injured that she sank half an hour later. Libelant noticed that the boat was settling and thought she was sinking, but accepting the opinion of another that she was not, remained on board for 15 or 20 minutes longer, and until the water was coming over the deck, and then, in attempting to climb on board an adjoining barge, in her excitement fell and was injured. *Held*, that the collision was not the proximate cause of her injury.

In Admiralty. Suit by Evelyn Keenan against the steamship Roman Prince and the Prince Line, Limited. Decree for respondents.

⬅➡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Edward J. McCrossin, of New York City (William F. Purdy, of New York City, of counsel), for libelant.

Kirlin, Woolsey & Hickox, of New York City (W. H. McGrann, of New York City, of counsel), for claimant and respondent.

AUGUSTUS N. HAND, District Judge. This libel was filed to recover damages for personal injuries alleged to have been caused to the libelant by a collision between the steamship Roman Prince and a grain barge known as the C. W. Crane, lying at the Bush Docks, Pier 5, Brooklyn. I have read the testimony in the case of Philip B. Kenny against the steamship Roman Prince tried before Judge Chatfield, together with the proofs and his opinion in that case (270 Fed. 988), and considered this testimony, as well as such evidence as was offered before me on the first question involved in the present case, namely, whether the steamship Roman Prince collided with the barge C. W. Crane.

Mrs. Keenan testified that she was sitting in the cabin of the C. W. Crane, and saw and felt the impact of the Roman Prince as it backed out of the slip. Her story was supported by Jensen, a bargeman of the Jersey Central Barge No. 321, Maddlone, a tugmaster, McGovern, checker for Luckenbach, Larson, bargeman on Jersey Central No. 109, and Callahan, bargeman on army barge No. 308. These witnesses may have been friends of the libelant, or her husband, who was the bargeman of the C. W. Crane, but it does not appear that they were not disinterested witnesses.

The respondent called many more witnesses than the libelant, who testified that there was no collision. However, many of them were either officers of the Roman Prince, or were engaged in handling her lines as she was warped out of the slip between Piers 4 and 5, Bush Docks, without the customary aid of tugs, which were lacking owing to a harbor strike. The Roman Prince was a vessel 420 feet long, with 54 feet beam. She was moored bow on, and had to be backed out and finally around the outer or westerly end of Pier 5, so that she could proceed to the southward towards Staten Island and on her ultimate course. Her chief officer, Reid, standing on the port wing of the bridge, said that she did not touch the C. W. Crane, but he estimated the clearance at only 6 or 8 feet. The radio man, Hughes, said that she did not touch, and that the clearance was about 10 feet. Shooks, her pilot, estimated that she was not within 5 to 10 feet, but he had previously stated that she was not within 50 feet of anything. Dawson, the chief steward, said there was a clearance of 20 feet. Learmouth, an apprentice, who was attending to lines and fenders on the Roman Prince, said that there was a clearance of 100 feet on each side. Rickman, another apprentice, and Hodge, an apprentice on the bridge, who took telegraph orders, said there was no collision. The second officer, Pallister, said that he was in a position to see if the Roman Prince struck any lighter, and that he saw no collision.

It is evident, however, from the admitted testimony of those on board the Roman Prince that she had to pass between steamships on

the northerly side of Pier 4, and the two lighters, the Crane and Jersey Central No. 321, on the southerly side of Pier 5. She was also using her engines somewhat when about half way out of the slip, and the weight of the testimony indicates that the starboard line which held her away from these lighters was slackened while she passed out near the end of the slip, before the port line was let go. All this indisputably would tend to draw the steamship towards the C. W. Crane, and the testimony of her own officers indicates that she was very close to the latter vessel. Her owner, Kenny, testified that the Crane prior to the collision was in good condition, and the diver, who went to examine her shortly after the collision, found that a number of planks had started.

Testimony was offered by the respondent to show that the curve of the hull of the Roman Prince was such that a collision would have carried away the cabin on the C. W. Crane, and otherwise have injured her before any part of the Roman Prince, whether hull, propeller, or rudder, could have touched the barge. The fact, remains, however, that the Roman Prince was passing out of the slip, admittedly came extremely close to the barge, that five witnesses besides the libelant testified that they saw the collision, and no other explanation than that of a collision seems reasonable to account for the sinking of the Crane.

Judge Chatfield, moreover, heard a great number of witnesses called by both sides, and believed the story of the libelant. Under all the circumstances, I also am inclined to accept their story as a whole, and to find that the C. W. Crane was sunk by reason of the negligent navigation of the Roman Prince.

The second question is whether the injuries to the libelant were the result of this collision. Mrs. Keenan testified that 20 or 30 minutes after the collision, when the boat was sinking, she attempted to get off and climb on the Jersey Central barge No. 321, and injured her stomach and kneecap by falling between the two boats. She was asked in her examination before Judge Chatfield (Minutes, p. 9, in the case of Kenny v. Roman Prince—Eastern District):

"Q. After the steamer struck your boat and slid along and went off, did you notice whether or not your boat started to leak? A. Well, it went right down. It was settling all the time.

"Q. Had your boat been leaky before? A. Never. * * *

"Q. How long did your boat remain afloat? A. Well, about half an hour.

"Q. Did you get off your boat? A. Well, I did. I had some help. I fell when I got off.

"Q. How did you get off? A. I went on the Jersey Central barge; they pulled me up. I fell in between the boats, and him and another fellow pulled me up.

"Q. You fell between the 321 and your boat? A. Yes.

"By the Court: Q. What made you fall? A. I got excited. The water was coming up on the boat when I got off.

"Q. Where was the water? A. It was coming up on the deck and was way up.

"Q. The boat had sunk far enough so that the water was coming over the deck? A. Yes. * * *

"Q. As I understand, it was about half an hour from the time of the collision up to the time that you left the boat? A. It was about half an hour; yes.

"Q. Where were you during that half an hour? Just tell us what you did?

A. I didn't realize the boat was sinking at the time. I knew there was some damage done; but I didn't realize that the boat was sinking just then. That was the reason I stayed on the boat.

"Q. You said you came out of the cabin and came out on deck. Did you come out on deck? A. I came out on deck and spoke to the man on the ship.

"Q. Then did you go right back into your cabin? A. Yes, sir; I went right back, and then I went out on deck again, and called the man on barge 321, and told him the boat was sinking, and he didn't think it was; but she was settling all the time, from the time the ship struck her.

"Q. How long was that after you say the barge was struck, which you have placed at 1:15, was it that you called the captain of the 321? A. It was about 10 or 15 minutes after that, and then I went back in the cabin again, after I called him.

"Q. How did you know that your vessel was sinking? A. I seen it sink.

"Q. Well, what did you see? A. I saw the boat settling down. The boat started to fill; that was the first of my knowledge of the boat sinking.

"Q. When did you see that? A. Shortly after the ship struck her.

"Q. And how much, do you think? A. About 5 inches afterwards." (This apparently is a stenographic error for "5 minutes".)

The testimony taken in the Brooklyn trial indicates that, very shortly after the collision, a tugboat went to the assistance of the C. W. Crane and tried to siphon her out, and Mrs. Keenan said, in answer to the question whether there was any tugboat trying to siphon out the C. W. Crane at the time she left the latter: "A. Yes."

The situation is therefore this: Mrs. Keenan saw the C. W. Crane settling shortly after the collision, took the assurance of the bargeman on No. 321 that he did not think the Crane was going to sink, stayed on her, and finally, after waiting until the water was coming in through the scuppers, started to climb off the boat and in her excitement was injured. Under such circumstances, I think the collision of the Roman Prince with the Crane cannot be regarded in a legal sense as the cause of the injuries to Mrs. Keenan. She had 15 to 25 minutes to get off the boat when she knew it was settling. She chose, because of a somewhat natural desire to stay by the vessel, to take the risk for a time of the sinking, and finally, from 20 to 30 minutes after the collision, suffered injuries because she stumbled between the two boats. If she would have avoided stumbling by leaving the C. W. Crane before it had settled, so that there was a long climb to the deck of the Jersey Central lighter, I think she should have left earlier; but, at any rate, I can see no reason why stumbling on her part can be reasonably attributed to the collision. If there had not been time to deliberate, and take care in leaving the C. W. Crane—in other words, if the facts had come within the "squib" case—we would have a different situation. Scott v. Shepherd, 2 W. Bl. 892.

Here I think the collision was not a proximate cause of the injuries to the libelant, and the libel is accordingly dismissed, but without costs.