WAGNER v. T. S. C. MOTOR FREIGHT
LINES, Inc.*

No. 16929.

Court of Appeal of Louisiana.   Orleans.

May 30, 1938.

*Rehearing denied June 17, 1938;  writ of certiorari denied July 7, 1938.

Joseph M. Jones, Wm. Behan Dreux, and A. J. Waechter, Jr., all of New Orleans, for appellant.

Leon Sarpy and Robert Sarpy, both of New Orleans, for appellee.

McCALEB, Judge.

The plaintiff, Wiltz W. Wagner, brought this suit against T. S. C. Motor Freight Lines, Inc. seeking to recover the full value of a certain baking machine owned by him which was damaged while it was being loaded onto the defendant's truck at Rayne, La.

Defendant disclaims liability on the ground that the machine was not damaged through its fault and, alternatively, that, if it should be held that it is liable to plaintiff, his recovery should be limited to the extent of the repairs necessary to place the apparatus in the condition it was prior to the accident.

In the court below, there was judgment in favor of plaintiff for the value of the machine which was fixed at $877.50. The defendant has appealed from the adverse decision and the plaintiff has asked for an increase of the award.

We find the facts of the case to be as follows:

The defendant is a common carrier operating truck lines in this State. The plaintiff is engaged in the wholesale bakery and confectionery supply business and operates in the City of New Orleans under the name of Charles P. Wagner & Bro.

On June 1, 1935, plaintiff purchased from the Triumph Manufacturing Company of Cincinnati a certain drum moulder baking machine which is a large and cumbersome device used in the making of bread. After it was delivered to him, he shipped it to the Schexnaydre Bakery at Rayne, La. for demonstration with a view of effecting a sale of it to the latter. The machine proved to be unsuitable to the needs of the Schexnaydre Bakery and the plaintiff agreed to take it back. Accordingly, he instructed the defendant to call for it at Schexnaydre Bakery at Rayne, La. and haul it to his place of business in New Orleans.

On October 27, 1936, one of the defendant's trucks repaired to the Bakery to get the machine and, while in the act of loading it onto the truck, its employee permitted it to fall to the ground. As a result, it was damaged. After the accident happened, the defendant's driver did not transport the machine to New Orleans in accordance with the contract of affreightment but left it upon the premises of the Schexnaydre Bakery. The plaintiff was notified of the occurrence and negotiations were begun between the parties with a view of adjusting the loss. In furtherance thereof, the machine was later transported by the defendant to its warehouse in New Orleans in order that the damage to it might be determined. Shortly after it arrived at the warehouse, it was inspected by both the plaintiff and the defendant with a view of ascertaining the extent of the damage. As a result of his examination, plaintiff contended that the machine was a total loss in that it was damaged beyond repair. The defendant, on the other hand, took the position that the device could be placed in perfect working order at a cost of $205.00. The negotiations for a compromise of the matter were accordingly terminated and, on August 13, 1937, plaintiff brought this action for the value of the apparatus, maintaining that it could not be restored to its previous condition. At the time the suit was filed, the machine was located at the defendant's warehouse where it remained until August 18, 1937, when it was completely destroyed by a fire which consumed the structure.

In addition to the cause of action set out in the petition, the plaintiff has, by supplemental pleadings filed since the destruction of the machine by fire, claimed

that the defendant is liable to him as a common carrier for the loss occasioned by the conflagration. It is clear that if he is correct in this latter contention, he is entitled to recover the value of the machine. At the outset, therefore, we address our attention to a consideration of this point.

■ Plaintiff proclaims that the contract of affreightment has never been terminated because the defendant was at all times obligated to deliver the moulder to his place of business in New Orleans and that, therefore, when the machine was destroyed by fire on August 18, 1937, the defendant was holding it as a common carrier and not as a warehouseman. If this be true, it is not to be disputed that the defendant is liable for the loss of the machine for it is well settled, under our law, that, insofar as the liability of a carrier to a shipper is concerned, a fire causing the destruction of the goods is not such a fortuitous event as to absolve the former from liability. See Lehman, Stern & Co., Ltd., v. Morgan's Louisiana & Texas R. & S. S. Co., 115 La. 1, 38 So. 873, 70 L.R.A. 562, 112 Am.St.Rep. 259, 5 Ann.Cas. 818. There it was held that, while, under Art. 2754 of the Civil Code, a carrier is not the insurer of the shipper's goods (as in cases under the common law) still it cannot be exonerated from responsibility where the goods in its custody are destroyed by fire, unless it is able to prove, to the satisfaction of the court, that it was free from negligence.

■ On the other hand, it is also firmly established that a warehouseman is but an ordinary bailee of the goods in his possession and that, where a general conflagration occurs, which destroys such goods, the owner has the burden of proving that the fire originated or was permitted to spread through some fault or negligence on the part of the warehouseman. See McCullom v. Porter, 17 La.Ann. 89, Scott v. Sample, 148 La. 627, 87 So. 478, and Austin v. Heath, 168 La. 605, 122 So. 865. Also compare Royal Ins. Co. v. Collard Motors, La.App., 179 So. 108 and Jones v. Shell Petroleum Corporation, 185 La. 1067, 171 So. 447.

■ In the instant case, the fire, which resulted in the loss of the machine, was a general conflagration which consumed the defendant's warehouse. There was no evidence submitted by either party to account for the manner in which it happened. For this reason, it will be readily seen that, in view of the jurisprudence, the question of defendant's responsibility for the loss on this score depends upon whether the contract of affreightment was still in force and effect, for it has been many times declared that, where such an agreement has come to an end and the goods still remain in the custody of the carrier, the latter becomes a bailee and its liability is analogous to that of an ordinary warehouseman. See American Jurisprudence, Vol. 9, Sec. 670, et seq.

In the case at bar, it appears that, after the machine had been damaged by the defendant, it was left upon the premises of the Schexnaydre Bakery where it remained for several months. The plaintiff was duly notified of the mishap by the defendant and, in an effort to adjust the loss, the machine was brought to the defendant's warehouse at New Orleans by mutual consent of the parties. When it arrived at the warehouse, it was examined by both parties for the purpose of determining the extent of the damage. The plaintiff asserts that, under its agreement with defendant, the contract of affreightment could not be terminated until delivery was made at his place of business. We do not think so. It is manifest to us that, under the particular circumstances here presented, the defendant at no time intended to concede that it would undertake to insure the safety of the machine during the period of the negotiations. But apart from this, and even though we assume for the sake of discussion that the contract was still in existence at the time the machine was stored in defendant's warehouse, it is perfectly plain that the defendant's liability as a common carrier ended on the date the negotiations looking to a settlement fell through and when plaintiff filed the present suit claiming that the machine was a total loss. It must be remembered that this action was instituted five days before the machinery was destroyed by fire. By making his demand, the plaintiff definitely severed all compromise negotiations and, in taking the position that the machine was worthless, abandoned it to the defendant. It would have been a useless gesture for the defendant to attempt, under these circumstances, to carry out the affreightment contract. Hence, we opine that the carrier was holding the machine for plaintiff's account as an ordinary bailee. It follows, therefore, that, since the burden of proof was upon the plaintiff to show that the defendant

was guilty of some fault with respect to the fire originating in its warehouse and having failed to do so, the defendant is entitled to be freed from responsibility for the damage it occasioned.

The next proposition set forth by the plaintiff is that the defendant, having damaged the machine in loading it upon its truck at Rayne, La., is liable to him for the value thereof inasmuch as it became a total loss. In answer to this point, the defendant first contends that it is not responsible for the reason that, at the time its driver called for the machine, it was not properly crated for shipment and that its employee refused to accept it for transportation unless the defendant would be exonerated from liability for any damage which might be caused to it.

In support of this proposition, defendant depends upon the evidence of its truck driver. He testified that he told Mr. Schexnaydre (who had possession of the machine) that he would not transport it unless his company was released from any liability for damage which might occur to it in view of the fact that it was not properly crated for shipment. He further says that Mr. Schexnaydre instructed him to take the machine and that he did so under the belief that the defendant would be protected in case of damage. But there is nothing in the record to show that Schexnaydre was plaintiff's agent and that, as such, he was authorized to make any agreement with defendant's driver limiting the defendant's liability in the event of damage to the machine. We therefore conclude that plaintiff is entitled to recover the damage he sustained as a result of defendant's failure to perform the contract of affreightment.

In an attempt to prove that the machine was damaged so badly that it constituted a total loss, plaintiff produced two witnesses, viz., a Mr. Jensen, Sales Manager of the Triumph Manufacturing Company (plaintiff's vendor) and a Mr. Lane, a mechanic doing business in New Orleans.

Jensen stated that he inspected the machine after it had been stored in defendant's warehouse and that it was worthless because it had been damaged beyond repair. On cross-examination, however, he admitted that he was not a mechanic and, while he is somewhat familiar with the mechanism of the device (being in the business of selling these machines), he is unable to state what was wrong with it or why it could not be restored to its former condition. We cannot accept his statement as expert testimony as it is patent that the conclusions he seeks to establish are merely guesses and are not founded upon a requisite knowledge of mechanics.

The evidence of Lane does not sustain plaintiff's contention that the machine was damaged beyond repair. On the contrary, on cross-examination, he stated as follows:

"Q. The machine could be fixed so that it would operate satisfactorily, couldn't it? A. It could be fixed. I would prefer to use the word 'rebuilt'."

He further said that he was not in position to state what it would cost to repair the device and did not know whether the estimate of $205.00 by defendant's witness E. E. Longley was reasonable or not.

On the other hand, defendant produced Mr. Longley, who is engaged in the welding business in New Orleans and who inspected the machine at the time it was stored in the warehouse. He stated that he has had considerable experience in repairing machines similar to the one in controversy; that his examination of it revealed that the damage consisted of a break at its base; that its frame was chipped, the hopper cracked, the extended shafts and burr wheels bent and that the guards of the protecting gears were broken. He further declared that the machine could be satisfactorily repaired for $205.00 and he made a written offer to the defendant to perform the work for that price.

In view of the foregoing testimony, we have no hesitancy in finding that the plaintiff has failed to prove that the damage to the machine constituted a total loss. It was his duty to minimize his damage and he had no right to assume that the apparatus could not be repaired. Moreover, he was not justified in relying upon the conclusion of Mr. Jensen, who was devoid of mechanical knowledge. The testimony of his other expert, Mr. Lane, did not sustain his claim. We see no reason to doubt the statement of Mr. Longley and, as it is the only evidence in the record tending to establish the extent of the damage to the machine, we accept the figure given by him as the amount which plaintiff is entitled to recover.

For the reasons assigned, the judgment appealed from is amended by reducing the amount thereof to $205.00 and as thus amended it is affirmed. Costs of this ap-

peal to be paid by the plaintiff, all other costs to be borne by the defendant.

Amended and affirmed.