At the intersection of Palm Street and So. Carrollton Avenue, at about 10:30 o'clock on the night of February 1st, 1942, the Ford sedan automobile of plaintiff, Paul Bertuccini, driven by his minor son, Paul Bertuccini, Jr., was in collision with a taxicab of Toye Bros. Yellow Cab Company, a partnership. Both automobiles sustained damage. *Page 248 
Bertuccini, charging that the accident was caused by negligence on the part of the driver of the taxicab, and by the fact also that the brakes on the taxicab were defective, and alleging that his son was not in any way at fault, seeks judgment against the said partnership and the members thereof in the sum of $155, which he alleges was the cost of removing his car from the scene of the accident and of making the repairs which were rendered necessary by the collision.
The defendants, admitting the occurrence of the accident, but denying that their employee was in any way at fault, and denying also that the brakes on the taxicab were defective, disclaim all liability in the premises, and, averring that the sole cause of the accident was negligence on the part of plaintiff's son, by reconventional demand, seek judgment against Bertuccini for $39.49, which they allege was the cost of making the necessary repairs to the taxicab.
There was judgment in favor of plaintiff for $155 and dismissing the reconventional demand. Defendants have appealed.
So. Carrollton Avenue is a broad boulevard, having two driveways and a wide neutral ground in the center. Palm Street intersects Washington Avenue at a right angle. The taxicab was on its way out Carrollton Avenue from the direction of the Mississippi River towards Tulane Avenue, and the Bertuccini Ford had come in Palm Street from Jefferson Parish, and had crossed the upper roadway of Carrollton Avenue, and it was the purpose of young Bertuccini to cross the neutral ground and to turn to his left on Carrollton Avenue so as to drive towards Tulane Avenue.
Though the neutral ground of Carrollton Avenue is very wide from the Mississippi River as far as Palm Street, from Palm Street to the New Basin Canal it has been made narrower so that the two driveways from Palm Street to the New Basin Canal are considerably wider than they are from Palm Street back towards the Mississippi River and St. Charles Avenue. Therefore, as the Bertuccini car was crossing the neutral ground at Carrollton Avenue, when its rear wheels were about on the second street-car track, its front had already passed beyond the line of the neutral ground towards its left but had not yet reached the line of the neutral ground towards its right.
It is the contention of Bertuccini that when his son drove the Ford to that position with its rear wheels just about on the second street-car tracks and its front extended into the driveway but not yet extending beyond the edge of the neutral ground to its right, the taxicab, which was approaching on that side of Carrollton Avenue, swerved slightly to the left after passing beyond the end of the wider neutral ground, and, as a result of this swerve, crashed into the right front side of the stationary Ford, which Bertuccini alleges had been brought to a stop in order that the taxicab might pass in front of it.
Plaintiff, as we have already said, also contends that the brakes on the taxicab were defective and that the driver admitted this in the presence of all of the occupants of the Bertuccini car.
Defendants, on the other hand, maintain that after the taxicab had entered and pre-empted the intersection, young Bertuccini, who, in the Ford was crossing the neutral ground and the street-car tracks, did not stop and sound his horn as he should have done in compliance with the traffic ordinances of the City of New Orleans, but continued on without stopping, and crashed into the left side of the taxicab.
Defendants also maintain that in any event, and even if there is liability in them, there is not sufficient proof in substantiation of the amount of the claim of plaintiff.
That the Ford was standing still at the time of the impact is abundantly proven as is also the contention of plaintiff that it would probably not have been struck had the taxicab continued on a straight course instead of swerving to its left after reaching the intersection at which the roadway widened out for an additional 6 or 8 feet.
There were four occupants in the Ford car. Three testified and the absence of the fourth was satisfactorily explained. The three who testified made unusually clear and understandable statements. They all said that the Ford had been brought to a stop with its front end some 4 or 5 feet beyond the line of the narrow neutral ground to their left but not beyond the line of the wider neutral ground to their right, and they all said that while it was in that position the taxicab struck it. The photographs of the two vehicles show conclusively that the taxicab struck the Ford since the front of the taxicab is considerably damaged, whereas the front of the Ford *Page 249 
shows no damage at all, the right side having sustained the entire force of the blow.
The story of the chauffeur of the taxicab is not believable because of physical facts, if not for other reasons. He said that his cab was struck while the Ford was going at a considerable speed and yet he also said that the effect of the blow was to drive his car upon the neutral ground which was to its left. If his car had been struck on the left side and near the front the effect would have been to drive it to its right and not to its left upon the neutral ground. The chauffeur testified that after the impact, the taxicab moved only a few feet, whereas the record shows clearly that as a matter of fact it proceeded from 100 to 150 feet, and finally came to a stop almost across the neutral ground. This fact not only evidences high speed but also indicates defective brakes; and the fact that the brakes were defective is positively testified to by the three occupants of the car, all of whom stated that as soon as the accident had occurred, the driver of the taxicab admitted that he could not make the brakes work.
Miss Drause, one of the occupants, stated that the driver said: "I pumped the brakes three (3) times but they wouldn't hold."
Young Bertuccini said that he (meaning the driver) had said: "That he had pumped his brakes and they snapped, they didn't hold * * * *."
And this witness added "he even showed us how his brakes went all the way to the floor and didn't hold."
Rolland, the third occupant of the car, when asked whether the driver of the taxicab made any statement, said: "He said that he hit his brakes and they seemed to hold and he said that he hit them again and they broke."
In view of the physical facts and the testimony of these witnesses, we conclude that the taxicab swerved to its left and struck the stationary Ford and that that occurrence resulted solely from the negligence of the driver of the taxicab, and that the force of the blow was augmented by the failure of the brakes of the taxicab to work.
When we come to consider the extent of the damage to the Ford, we find no evidence to contradict the statement of plaintiff which is that he sought two estimates for making the repairs, and that he accepted the lower of the two and had the repairs made by Fairchild Motor Corporation. He produced a receipted bill for $155, and testified that all of the repairs shown had been made necessary by this accident. From this bill it appears that the Fairchild Motor Corporation paid to Armstrong Service $6.50 for towing the car. Plaintiff did not produce the mechanic who made the repairs nor did he produce anyone from the Fairchild Motor Corporation to corroborate his statement. Defendants point to this and contend that there is not sufficient corroboration of plaintiff's statement that $155 was the cost of the repairs.
In support of the contention that there is not sufficient proof of the cost of repairs, counsel for defendants cite two cases, Andrews v. Foster, La.App., 170 So. 563, and Dunnington v. Sable, La.App., 148 So. 724, 726. In the Andrews case we said:
"It is a plain duty of the plaintiff, in all damage suits, to minimize his loss and Andrews did not have the right to decide for himself that the automobile was worthless but should have produced expert testimony on this point. Undoubtedly he is entitled to recover the value of the automobile if it became a total loss as a result of the accident or to have judgment for the necessary repairs in the event it was not a total loss. But he has failed in both respects to prove the damage to the automobile by a fair preponderance of evidence. For this reason, his demand for the value of the automobile must be rejected as of nonsuit."
In the Dunnington case, we said:
"The plaintiff's proof of the alleged damages is most meager and vague both as to the damages to the truck and the quantity and value of the milk that was lost. It appears that he had paid $814 for the Chevrolet truck and had driven it 29,000 miles in about a year's time. Plaintiff testified that he would not take $550 for it and that he had a Mr. White, the Chevrolet dealer at Hammond, make an estimate for repairing the damages, which amounted to $525.45; but Mr. White did not testify and the estimate was not introduced in evidence. Under the circumstances we do not feel that plaintiff has sufficiently shown the extent of the damages and how much it would cost to repair the truck."
All that these two cases hold is that everyone must minimize his loss as *Page 250 
far as is reasonably possible and that he must prove, by the best available evidence, the extent of the damage. In each of the cases cited the plaintiff had failed to prove the extent of his damage by the best available evidence. In the case at bar we think that he has done so.
The judgment appealed from is affirmed at the cost of appellants.
Affirmed.