**SOUTHPORT TRANSIT COMPANY,**
**Appellant,**

v.

**AVONDALE MARINE WAYS,**
**Inc., Appellee.**

**No. 15843.**

United States Court of Appeals
Fifth Circuit.

June 15, 1956.

Rehearing Denied Aug. 7, 1956.

Benjamin W. Yancey, New Orleans, La., Terriberry, Young, Rault & Carroll, New Orleans, La., of counsel, for appellant.

Selim B. Lemle, George B. Matthews, New Orleans, La., Lemle & Kelleher, New Orleans, La., of counsel, for appellee.

Before HUTCHESON, Chief Judge, and RIVES and JOHN R. BROWN, Circuit Judges.

JOHN R. BROWN, Circuit Judge.

A claim with likely, known congenital weaknesses foreshadowing doubtful survival, for fire damage to a tug in a shipyard on August 25, 1946, incubated through the passage of time into one of

fairly healthy proportions when it was finally tried nine years later in January 1955. For in the meantime, much grist had been milled.

Where, in 1946, Belden v. Chase, 1893, 150 U.S. 674, 14 S.Ct. 264, 37 L.Ed. 1218, had regained, In re Pennsylvania Railroad Co., 2 Cir., 1931, 48 F.2d 559, 1931 AMC 852, certiorari denied James McWilliams Blue Line, Inc., v. Pennsylvania R. Co., 284 U.S. 640, 52 S.Ct. 21, 76 L. Ed. 544, after occasional lapses by the Second Circuit, e. g., Roebling's Sons of New York v. Erickson, 261 F. 986; Storgard v. France & Canada S. S. Corp., 263 F. 545; Port of New York Stevedoring Corp. v. Castagna, 280 F. 618, and held, Guerrini v. United States, 1948, 167 F.2d 352, 355, 1948 AMC 724, the fealty of the lower Federal Courts to declare that in a common law action on a maritime claim, contributory negli-

gence of the plaintiff was a complete bar; its hold was weakened by a series of parenthetical body blows,[1] and was lost altogether, without even being mentioned by name, for personal injuries [2] as it was for property losses.[3]

This circumstance affected Court and counsel so much so that this mutual preoccupation with contributory negligence, as such, and its consequence, seemingly allowed the real problem to go unnoticed.

■ The tug Lucinda Clark was on a marine railway in the shipyard undergoing contract repairs, including the removal and partial replacement of a bent engine exhaust pipe running up through the top decking of the wooden deckhouse. On evidence fully sufficient, Galena Oaks Corp. v. Scofield, 5 Cir., 218 F.2d 217; cf. C. J. Dick Towing Co. v. The Leo, 5 Cir., 202 F.2d 850, 1953 AMC 498; McAllister v. United States, 348 U.S. 19, 75

1. Garrett v. Moore-McCormack Co., 1942, 317 U.S. 239, 63 S.Ct. 246, 250, 87 L.Ed. 239, 1942 AMC 872: "In many other cases this Court has declared the necessary dominance of admiralty principles in actions in vindication of rights arising from admiralty law. Belden v. Chase * * * an 1893 decision which respondent relies upon as establishing a contrary rule, has never been thus considered in any of the later cases cited." Seas Shipping Co. v. Sieracki, 1946, 328 U.S. 85, 88, 66 S.Ct. 872, 874, 90 L.Ed. 1099, 1946 AMC 698: "It is now well settled that a right peculiar to the law of admiralty may be enforced either by a suit in admiralty or by one on the law side of the Court. * * * Garrett v. Moore-McCormack Co. * * *."

2. Pope & Talbot, Inc., v. Hawn, 1953, 346 U.S. 406, 408, 411, 74 S.Ct. 202, 204, 98 L.Ed. 143, 1954 AMC 1, an action at law in a Pennsylvania State Court for a maritime injury: " * * * The harsh rule of the common law under which contributory negligence wholly barred an injured person from recovery is completely incompatible with modern admiralty policy and practice. Exercising its traditional discretion, admiralty has developed and now follows its own fairer and more flexible rule which allows such consideration of contributory negligence in mitigation of damages as justice requires [citing as footnote 1 The Max Morris, 1890, 137 U.S. 1, 11 S.Ct. 29, 34 L.Ed. 586;

and The Arizona v. Anelich, 1936, 298 U.S. 110, 56 S.Ct. 707, 80 L.Ed. 1075, 1936 AMC 627, and especially at page 122 listing cases prior to the Jones Act [46 U.S.C.A. § 688] where seamen's contributory negligence merely reduced damages]. Petitioner presents no persuasive arguments that admiralty should now adopt a discredited doctrine which automatically destroys all claims of injured persons who have contributed to their injuries in any degree, however slight. * * * It is * * * contended that one who sues on the 'law side' of the docket has much less chance to recover than one who sues on the 'admiralty side.' * * * Of course the substantial rights of an injured person are not to be determined differently whether his case is labelled 'law side' or 'admiralty side' on a district court's docket. Seas Shipping Co. v. Sieracki * * *. The District Court and Court of Appeals correctly refused to deny Hawn's federal right of recovery by applying the Pennsylvania contributory negligence rule." See also discussion of this matter by the Third Circuit, Hawn v. Pope & Talbot, Inc., 1952, 198 F.2d 800, 806, 1952 AMC 1708.

3. W. E. Hedger Transportation Corp. v. United Fruit Co., 2 Cir., 1952, 198 F.2d 376, 1952 AMC 1469; damage to barge from negligent stowage by stevedore. The result, while slow in coming, had been long predicted, see Robinson on Admiralty, pp. 859–864, and 64–69.

S.Ct. 6, 99 L.Ed. 20, 1954 AMC 1999, the Court, trying this Civil Action without a jury, found that, in cutting with an acetelyne torch or in welding, a fire was negligently started. The shipyard employees threw a small amount of water on the area where the pipe came through the tar roofing paper apparently, though negligently, considering that the fire was extinguished. This was about 1:00 (noon) Sunday. About 3:00 p. m., after all shipyard employees had left the vessel, the tug Master saw smoke again coming from the same area. He, as had the shipyard employees, poured a small amount of water around the pipe thinking, although negligently mistaken, that the fire was out.

On leaving the tug an hour later, he instructed the Chief Engineer to be cautious about the possibility of fire, and around 5:00 p. m. the Chief Engineer, seeing smoke in the same area, repeated the negligent sequence of 1:00 p. m. and 3:00 p. m. by dousing a little water in this area under the mistaken, and negligent, belief that the fire was extinguished. Within an hour, all hands had gone ashore with no notice to the shipyard of either recurrence of the fire. Near 8:00 p. m. the shipyard's night watchman discovered the tug afire, but despite strenuous efforts by shipyard personnel and the local fire department, the fire was out of control and extensive damage [4] was done.

By extensive oral record statements at the conclusion of arguments, the Judge made it clear that he then considered both shipyard negligent and tug owner contributorily negligent,[5] and, apparently of the view that, following Louisiana law for a non-maritime tort, contributory negligence would bar recovery entirely, he announced his direction to enter judgment for the defendant shipyard. On plaintiff tug owner's motion for new trial, Hedger Transportation Corp. v. United Fruit Co., supra, and the interment of Belden v. Chase, supra, was pressed heavily to secure a judgment for half damages under the usual admiralty rule of mutual fault. Overruling this, the Court escaped the problem by then holding that the shipyard's negligence was a *condition*,[6] not a cause.

4. By stipulation and pretrial order, these skilled counsel, normally proctors before this same judge, followed the traditional admiralty practice of trying this Civil Action (jurisdiction based on diversity) as though it were a libel on the question of liability only, reserving the issue of damages for a Master.

5. "But now what is the situation with respect to contributory negligence? * * * Now it seems to me that a reasonably prudent man at that time [3:00 p.m.] having knowledge that at 1:00 o'clock this same thing occurred that water was thrown on it, and that it recurred, would have taken some further steps and was required to take some further steps to ascertain the origin of the smoke. Now we go beyond that. He advised the chief engineer of what had occurred. At about 5:00 o'clock, * * * the chief engineer discovered smoke a third time. He knew then that on previous occasions smoke had been seen in that same vicinity and it's almost incredible that under those circumstances a man would simply content himself by again throwing a couple of buckets of water * * *. I'm satisfied that the evidence establishes that the fire was caused by negligence on the part of the shipyard concurring with the negligence of the members of the crew of the vessel as the proximate cause in producing the damage. I think there must be a judgment for the defendant in the matter."

6. The Court adopted defendant's proposed supplemental conclusions of law IV and V prepared and served as required by Rule 2(d) of the District Court after the Order Overruling the Motion for New Trial:

### IV.

"Defendant's employees were negligent in starting the 'hot work' before wetting down the area around the pipe. Such negligence was, however, only a condition of the ultimate damage, not the cause, and was passive or secondary as contrasted to plaintiff's active and primary negligence. P. Dougherty Co. v. United States, 3 Cir., 1953, 207 F.2d 626.

### V.

"The efficient, active and primary cause of the fire was the negligence of plaintiff in failing to take proper steps to guard against fire aboard the vessel after

■ We agree with the tug owner that, the fire having been caused by the shipyard's negligence and its errors in failing properly to extinguish it being exactly of the same kind as the tug owner's, the finding of "condition" is clearly erroneous and cannot stand.

Though we join with the Second and Third Circuits in applying the maritime doctrine of divided damages, cf. Hartford Accidents & Indemnity Co. v. Gulf Refining Co., 5 Cir., 230 F.2d 346, to maritime causes of action whether pending as Civil Actions or Admiralty libels and conclude that the non-maritime *location* of the damage, T. Smith & Son, Inc., v. Taylor, 276 U.S. 179, 48 S.Ct. 228, 72 L.Ed. 520, 1928 AMC 447; State Industrial Commission of State of New York v. Nordenholt Corp., 259 U.S. 263, 42 S. Ct. 473, 66 L.Ed. 933; cf. Continental Casualty Co. v. Lawson, 5 Cir., 64 F.2d 802, 1933 AMC 794; Maryland Casualty Co. v. Lawson, 5 Cir., 101 F.2d 732, 1939 AMC 129; Avondale Marine Ways v. Henderson, 5 Cir., 201 F.2d 437, 1953 AMC 432, affirmed per curiam 346 U.S. 366, 74 S.Ct. 100, 98 L.Ed. 77, 1953 AMC

1990, is of no significance in the face of a time-honored traditional maritime cause of action for failure prudently to perform, cf. Ryan Stevedoring Co. v. Pan-Atlantic Steamship Corp., 350 U.S. 124, 76 S.Ct. 232, the maritime contract, Archawski v. Hanioti, 350 U.S. 532, 76 S.Ct. 617, for vessel repairs irrespective of the locale of performance, North Pacific Steamship Co. v. Hall Bros. M. R. & S. Co., 249 U.S. 119, 39 S.Ct. 221, 63 L.Ed. 510; The Robert W. Parson, 191 U.S. 17, 24 S.Ct. 8, 48 L.Ed. 73; Hall-Scott Motor Car Co. v. Universal Insurance Co., 9 Cir., 122 F.2d 531, 1941 AMC 1878, certiorari denied 314 U.S. 690, 62 S.Ct. 360, 86 L.Ed. 552, an automatic reversal with direction to enter judgment for half damages is far from indicated.

■ This is so because the principle applicable is not the ordinary one of contributory negligence which relates to the use of due care to avoid the happening of the event (here the fire) giving rise to the initial harm. Rather it is, or is akin to, the one universally [7] applied for both torts and contracts, generally described as the doctrine of avoidable con-

having seen smoke on three separate occasions at two hour intervals; in failing to advise defendant of having seen smoke aboard the vessel on these occasions, and in leaving the vessel unattended without notice to defendant. This negligence bars any recovery by plaintiff herein. 38 Am. Jur., verbo 'Negligence', § 185; Hughes v. Lyon Lumber Co., 1925, 2 La.App. 365."

**7.** Restatement of the Law of Torts, § 918. "Avoidable consequences. (1) * * * A person injured by the tort of another is not entitled to recover damages for such harm as he could have avoided by the use of due care after the commission of the tort * * *. Hence contributory negligence either precludes recovery or is no defense at all to a claim for compensatory damages. On the other hand, the rule stated in this Section applies only to the diminution of damages and not to the existence of a cause of action."

25 C.J.S., Damages, § 32, "Avoidable Consequences"; § 33, "Duty to Prevent or Reduce Damages in General"; § 34, "Breach of Contract"; § 35, "Injury to Property". § 33, "As a general rule * * *

there can be no recovery for losses which might have been prevented by reasonable efforts on the part of the person injured * * *. The rule is a general one, applicable alike to actions in tort and on contract; and does not, in the absence of statute, depend on the nature of the action which the injured party seeks to maintain." § 35, "Injury to Property. As a general rule * * * one whose property is endangered or injured by the wrong or negligence of another must exercise reasonable care to protect it from further injury; and especially is this rule true where notice of the wrong or injury has been brought home to the party seeking to recover damages, and he has taken no steps to protect himself from further loss."

15 Am.Jur. Damages, Chapter E, Duty to Prevent or Minimize Damages, §§ 27, 28, 30, 40. § 40: "* * * the law will not allow one to sit idly by and see his property destroyed through forces negligently set in motion by another and then collect damages occasioned by his own failure to make reasonable exertion to arrest such disaster."

sequences and under which a plaintiff, with an otherwise valid right of action, is denied recovery for so much of the losses as are shown to have resulted from failure on his part to use reasonable efforts to avoid or prevent them. The contrast is most vivid in contemplating a traditional common law situation. "If the plaintiff by negligent action or inaction *before* the defendant's wrongdoing has been completed has contributed to cause actual invasion of plaintiff's person or property, the plaintiff is wholly barred of any relief. The doctrine of avoidable consequences comes into play at a later stage. Where the defendant has already committed an actionable wrong, whether tort or breach of contract, then this doctrine limits the plaintiff's recovery by disallowing only those items of damages which could reasonably have been averted * * * contributory negligence is to be asserted as a complete defense, whereas the doctrine of avoidable consequences is not considered a defense at all, but merely a rule of damages by which certain particular items of loss may be excluded from consideration * * * " [emphasis the author's], McCormick on Damages, West Publishing Company, 1935, Chapter 5, Avoidable Consequences, pages 127 et seq.; see also 61 Harvard Law Review (1947), 113, 131–134, Developments in Damages. Recognized universally,[8] it is nonetheless understandable that variable conceptual explanations [9] are given ranging from contributory negligence, as such, lack of proximate cause and a so-called "duty" to mitigate. Admiralty

8. Application of the doctrine by a federal court sitting in Louisiana for non-maritime damage occasioned on Louisiana land will not offend Louisiana policy, see, e. g., Adam v. English, La.App.1945, 21 So. 2d 633; Cailleteau v. Bordelon, La.App. 1949, 39 So.2d 117; Wagner v. T.S.C. Motor Freight Lines, La.App.1938, 181 So. 625; Weis v. Pan American Petroleum Corp., 1930, 12 La.App. 661, 126 So. 90; and Cf. Carrol v. Hartford Accident & Indemnity Co., La.App.1951, 52 So.2d 258; Bertuccini v. Toye Brothers-Yellow Cab Co., La.App.1942, 11 So. 2d 247.

9. See also McCormick on Damages, supra, at pp. 127, 128, " * * * it is important that the rules for awarding damages should be such as to discourage even persons against whom wrongs have been committed from passively suffering economic loss which could be averted by reasonable efforts, or from actively increasing such loss where prudence would require that such activities cease * *. The present rule is frequently described in the cases as a rule which imposes a 'duty' to minimize damages, and the expression is a convenient one. However, it has been pointed out that the 'duty', if it can be so-called, is not one for which a right of action is given against the person who violates it * * * Some judges and writers have considered the present rule as but an application of the principle which denies liability for injurious consequences which are not proximately caused by the defendant's wrong- doing. * * * Oftentimes, however, it is obvious that the defendant's wrongdoing *is* an active and substantial factor in producing the plaintiff's loss, even though that loss could have been avoided by activity on the plaintiff's part. * * To base it on the ground that the defendant's wrongdoing, though a substantial cause in the popular sense, is not the 'legal' or 'proximate' cause of the avoidable loss, seems needlessly artificial and likely to obscure the underlying motive for the rule." [Emphasis the author's.]

To Prosser, Law of Torts, Second Edition, 1955, § 51, Contributory Negligence—Distinguished from Avoidable Consequences, the basic criteria is a practical and working one: "It may be suggested that the underlying basis for the distinction is merely the practical feasibility of assigning a part of the damages to the defendant's negligence alone in the latter case. Here as elsewhere the Courts have been willing to apportion damages to separate causes when a logical basis may be found. In the 'avoidable consequence' cases, the initial damage cannot logically be charged to the plaintiff's own negligence as a cause, while the later damages may be. * * * it is suggested, therefore, that the doctrines of contributory negligence and avoidable consequences are in reality the same, and that the distinction which exists is rather one between damages which are capable of assignment to separate causes, and damages which are not."

courts are not free from this confusion.[10] But the result desired has a more adequate explanation for, "In such cases it is not true that the injured person has a duty to act nor that the conduct of the tortfeasor ceases to be a legal cause of

10. The following cases disallow damages in part apparently on notions of contributory negligence: In re Pennsylvania Railroad Co., supra, at 48 F.2d 564, discussed above, dividing damages to a boardwalk for failure of its owner to fend off a derelict barge for several days, lists many cases on this general subject; The Rebecca, 4 Cir., 152 F.2d 607, 1945 AMC 405, 1946 AMC 58, sinking of a floating pile driver from failure to repair apparently inconsequential collision wound; The Mars, D.C.S.D.N.Y., 9 F.2d 183; The Walter A. Luckenbach, 9 Cir., 14 F.2d 100, 1926 AMC 1281, grounding after collision but excused as *in extremis*; Sinram v. Pennsylvania Railroad Co., 2 Cir., 61 F.2d 767, 1932 AMC 799, and The Algonquin, 2 Cir., 70 F.2d 335, 1934 AMC 577, indicate a rule of proximate cause (foreseeableness) for the innocent cargo owner, contributory negligence as to the damaged ship owner.

The following emphasize lack of proximate cause: The Roman Prince, D.C.S.D.N.Y., 275 F. 712, failure prevent inrush of water through inconsequential collision wound; The Kaiser Wilhelm Der Grosse, 2 Cir., 145 F. 623, negligent handling of deck load after negligent swells from passing steamer; The Transfer No. 8, D.C.S.D.N.Y., 88 F. 551, failure to beach damaged barge; The Asbury Park, 2 Cir., 147 F. 194, damage from sinking and cargo loss denied for failure to repair inconsequential hole from negligent swells and failure to operate pumps; Sinram v. Pennsylvania Railroad Co., supra, cargo loaded and barge sunk after failure to inspect slight collision damage, also considers contributory negligence; The J. G. Rose, 2 Cir., 9 F.2d 917, 1926 AMC 34, recovery for slight collision damage allowed, but sinking loss rejected altogether indicating disapproval of The Silvia, D.C.E.D.N.Y., 2 F.2d 99, 105, 1924 AMC 885, which divided damages because of inability satisfactorily to distinguish between causes; The Edward A. Uhrig, D.C.W.D.N.Y., 9 F.2d 185, 1925 AMC 1503, failure to repair slight collision damage; The Mars, supra, recovery limited to initial slight collision damage not subsequent sinking; Westchester Fire Insurance Co., of New York v. Pennsylvania Railroad Co., 2 Cir., 96 F.2d 133, 1938 AMC 732, cargo loss denied for subsequent sinking due to failure to pump out after collision damage; The Algonquin, supra; The Black Diamond No. 2, D.C.E.D.N.Y., 59 F.Supp. 699, 1945 AMC 31, recovery limited to initial slight collision damage and not subsequent sinking from failure to inspect and repair; and see, The Glendola, 2 Cir., 47 F.2d 206, 1931 AMC 302, certiorari denied Standard Oil Co. v. Glendola S.S. Corp., 283 U.S. 857, 51 S.Ct. 650, 75 L.Ed. 1463, indicates foreseeability, not wrongfulness, is the significant quality for acts after initial injury and allows full damages since such acts were foreseeable.

The following apparently treated as avoidable consequence or with no clear indication of the theory: The Mascot, 3 Cir., 282 F. 766; Scott v. Cornell Steamboat Co., D.C.S.D.N.Y., 59 F. 638; The Timor, D.C.S.D.N.Y., 61 F. 633; Eclipse Lighterage & Transportation Co. v. Cornell Steamboat Co., 2 Cir., 242 F. 927, recovery limited to slight collision damage and not subsequent sinking from failure to pump; The Baltimore, 8 Wall. 377, 75 U.S. 377, 19 L.Ed. 463, Total loss for abandonment of schooner in shallow water disallowed; The Barryton, 2 Cir., 54 F.2d 282, 1931 AMC 1878; Pennsylvania Railroad Co. v. Washburn, D.C.S.D.N.Y., 50 F. 335, recovery limited to initial collision repairs where barge sunk when owner refused to pay overtime to pump out barge; The Redwood, 9 Cir., 81 F.2d 680, 1936 AMC 774, initial collision damage and not subsequent sinking allowed; Isthmian Steamship Co. v. Jarka Corp. of Baltimore, D.C.Md., 100 F.Supp. 856, 1951 AMC 1952, damage to vessel from vibration caused by propeller damage sustained in collision disallowed for failure to obtain repairs.

The following cases seem to treat it as one for normal divided damages: In re Pennsylvania Railroad Co., see above; Constantine & Pickering Steamship Co. v. West India Steamship Co., D.C.S.D.N.Y., 199 F. 964, charterer's failure to provide safe berth but vessel crew required to minimize damage when vessel broke adrift; The Silvia, supra, failure to protect against swells of passing vessel; The East Indian, 2 Cir., 62 F.2d 242, 1933 AMC 56, failure fend off swinging vessel; The J. C. Hart, D.C.E.D.N.Y., 43 F.2d 566, 1930 AMC 1421; see also the Walter A. Luckenbach, discussed above; but in each the injured party's action was apparently principally related to preventing the initial occurrence (impact, collision, etc.), rather than care after the event.

the ultimate harm; but recovery for such harm is denied because it is in part the result of the injured person's lack of care and public policy requires that persons should be discouraged from wasting their resources both physical or economic", Restatement of the Law of Torts, § 918, page 602.

So far as the original fire is concerned, there was, of course, no basis for imposing any or all or part of its consequences on the tug owner. The shipyard, on the basic fact findings of the District Court freed by us, as clearly erroneous, of the conclusion of "condition", was and remains clearly liable for this and all damage proximately caused by this fire.

The tug owner's action subsequent to that related not to liability but to a possible reduction in the award to the extent that its failure to take reasonable steps augmented the loss. This was, then, a question of diminution of damages, a matter strictly speaking, reserved by stipulation to a later day and not then before the Court, and, in any event, not adequately assayed [11] in the light of these applicable principles.

The judgment of dismissal must, therefore, be reversed and remanded with directions to enter interlocutory finding for the plaintiff tug owner, Southport Transit Company, and to take further, other and not inconsistent proceedings for the determination,[12] allowance and award of damages and the entry of final judgment thereon. On the remand, however, the Court must regard carefully that the tug owner is the innocent party whose property was damaged, to some extent at least, by negligent performance of its contract by the shipyard. Under the teaching of the doctrine of avoidable consequence, a substantial burden is therefore heavy on the wrongdoer to establish that prudence called for action by the tug owner at one or more of these stages; and, that had it been taken, the resulting damage would have been substantially different. Nor will inability satisfactorily to differentiate between the consequences of the tortfeasor's conduct and the innocent injured party's inaction be measured or its significance determined by common law notions which might deny recovery altogether.[13]

11. Obsessed, presumably, with the engaging prospect of pressing for and resisting the adoption within this Circuit of the Hedger rule, these skilled advocates, in their preoccupation, in their briefs in this Court and apparently in the Court below, treated it as a matter of liability with not even incidental, casual reference to the doctrine of avoidable consequences or citation of any of the material discussed by us in notes 7 to 10, inclusive, and the text related to them.

12. As this involves appraisal of the reasonableness of the tug owner's conduct and the extent of physical damage either done or avoidable at various stages, e. g., between 1:00 p.m. and 3:00 p.m., between 3:00 p.m. and 5:00 p.m., after 5:00 p.m., etc., and not a mere itemization and mathematical accounting on the basis of precise directions as to responsibility ordinarily undertaken by Commissioner or Master, it is clear that Court and counsel, under the original stipulation intended that all such basic legal questions were to be determined by the Court. Neither the peculiar twist taken by this case nor our remand is to reduce or restrict the issues for trial by the Court or expand those for determination by the Master, Fed.Rules Civ.Proc. rule 53 (b), 28 U.S.C.A.

13. See Prosser, supra, at page 287: " * * * In the 'avoidable consequence' cases, the initial damage can not logically be charged to the plaintiff's own negligence as a cause, while the later damages may be. If no such division can be made, the plaintiff's negligence will bar all recovery, notwithstanding that it is subsequent in point of time to that of the defendant.40" Footnote 40 states: "40. See the interesting case of continuing negligence of both plaintiff and defendant, with progressive damage to the plaintiff's cattle, in Atchison, T. & S. F. R.

This is a maritime cause of action for negligent performance of a maritime contract in which the rigors of contributory negligence as a bar are ameliorated, Pope & Talbot, Inc., v. Hawn, supra, by the admiralty concept of divided damage, and if, on a full trial, the Court concludes that prudence called for action by the tug which was not taken, but that the damage flowing therefrom cannot be separated with some reasonable certainty, then all damages should be divided. For unlike many situations in which a tortfeasor's wrong has spent itself, and what occurs later is from simple nonaction by the property owner, the shipyard's negligence here, in a very real sense, was still at work—not alone in consequences, but, from the nature of fire, in new destruction as this concealed fire continued to spread. Moreover, to the negligence—i. e., wrongful performance of its contract by starting the fire—must be added the negligent efforts made by the shipyard in its duty to extinguish it—a duty which, by its nature, continued after the initial event. If the tug owner's action in twice attempting to extinguish the fire by these simple means and twice believing that the job was done, was imprudent, it varies none in quality or character from the similar and *post* event breaches by the shipyard. In such a situation to visit all of the consequences on the innocent property owner whose only "duty" to act came into being because of the contractor's initial and subsequent wrongs merely because he cannot adequately separate them would be harsh indeed and completely out of keeping with the fairer and more enlightened admiralty rule of divided damages.

Reversed and remanded with directions.

Co. v. Merchants' Live Stock Co., 8 Cir., 1923, 293 F. 987, where recovery was denied 'because it is impossible to determine the amount of damage respectively caused by the negligence of each.' "